Earnshaw, Ex'r, *et al. vs.* Stewart.

*Decree affirmed.*

(Decided 5th February, 1886.)

---

BASIL B. EARNSHAW, Executor of JOHN EARNSHAW, *et al. vs.* C. MORTON STEWART.

*Insurance — Life policy — Assignment — Creditors — Act of 1878, ch. 200 — Fraudulent bill of sale — Limitations.*

Under the Act of 1878, ch. 200, a voluntary assignment of a life policy made by a father to his four sons, is valid, and free, and clear of all claims of his creditors.

The execution by a father to his son, of a bill of sale absolute on its face, but admitted to be a mortgage to secure a debt much less than the value of the property thereby conveyed, the limited means of the grantee, he not being in a condition pecuniarily, to justify the conclusion that he was able either to loan or become a creditor of the grantor to the amount of the alleged debt, the voluntary assignment about the same time by the grantor of a life policy to his sons, and the utter insolvency of the grantor, are facts which taken together, and in the absence of any evidence whatever on the part of the grantee to explain them, show that the bill of sale was fraudulent.

Although limitations may be a bar.to an action at law on a promissory note, referred to in a mortgage, after the lapse of three years from the maturity of the note, yet if the mortgage contains a covenant to pay the debt, an action will lie on the covenant at any time within twelve years from the default.

Earnshaw; Ex'r, *et al. vs.* Stewart.

APPEAL from the Circuit Court for Prince George's County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, ROBINSON, IRVING, RITCHIE, and BRYAN, J.

*C. C. Magruder,* and *Daniel R. Magruder,* for the appellants.

*Phil. H. Tuck,* and *Richard B. B. Chew,* for the appellee.

ROBINSON, J., delivered the opinion of the Court.

This is a bill to set aside an assignment of a life policy, made by a father to his four sons; also to set aside a bill of sale made to his son William, as being in *fraud of the rights of his creditors.* So far as concerns the life policy, it is sufficient to say, that the assignment is, under the Act of 1878, chapter 200, a valid assignment. This the Act declares in express terms. It may not be easy to understand what the Legislature meant by *"bona fide"* as here used, unless they meant there must be an out and out assignment to the wife or children, and not one upon some secret trust in favor of the assignor ; or it may be they meant it to apply to assignments of life policies to creditors, which the same section of the Act authorized the insured to make. But be that as it may, it is clear, we think, that construing the Acts of 1862, chapter 9, and 1878, chapter, 200, together, the Legislature meant to confer upon the insured the right to make a *voluntary* assignment of a life policy to his wife or children, *"free and clear"* says the Act, *"from all claims of the creditors of such insured persons."* *Elliott vs. Bryan, ante, page* 368.

In regard to the bill of sale, we see no reason why the decree below should be reversed. The question of fraud

is one which must of course depend upon the facts and circumstances surrounding the transaction in controversy. Now what are the facts surrounding the execution of this bill of sale? In the first place, the father being in failing health makes, a few weeks before his death, a voluntary assignment of his life policy to his four sons.

Three days afterwards, he makes a will in which he devises his real estate to his sons, subject to a mortgage held by the appellee. The only real estate belonging to him was the farm on which he lived, and which was sold after his death for less than five thousand dollars, not half enough to pay the mortgage debt. A few days after the execution of his will, he makes a bill of sale, absolute on its face, to his son William, of all his personal property, we say all, because it embraces his crop of tobacco of the year previous, then in his barn, his crop of wheat just harvested, his growing crop of corn and tobacco, his horses, cattle, sheep and farming implements of every kind, everything in fact, except some household goods, valued at $90. The consideration set forth in the bill of sale is $1000, and the property embraced in it, sold for more than $2700, the crop of tobacco then in the barn, realizing more than the entire consideration.

On the 31st of July, a few weeks after the execution of the bill of sale, the father died. On the 30th of November, the day on which the bill was filed by the creditors to set aside the bill of sale, a bill was filed by William, the son and grantee, alleging that the bill of sale was intended merely as a *security* for the payment of $1000, and praying among other things that the proceeds arising from the sale of the personal property may be applied to the payment of the debt, and the balance to be subject to the further order of the Court. Whether it is competent for a grantee to show, that a bill of sale attacked by creditors on the ground of fraud was, although absolute on its face, intended merely as a security for the payment of a debt, is

a question not necessary to be considered in this case. Admitting that it was so intended this does not mend the matter. That fact would in itself be a suspicious circumstance, and is recognized as a badge of fraud, because it is calculated to make creditors believe that no part of the property is liable for the payment of their debts, when in fact it is otherwise.

Then again the proof shows, that the son, the grantee is a person of limited means, the owner of some personal property, not more than necessary to carry on a moderate sized farm. Not in a condition pecuniarily to justify the conclusion, that he was able either to loan, or to become a creditor of his father to the amount of $1000.

Now in the face of all these circumstances—these *badges of fraud*, and so recognized by all the authorities, the bill of sale assailed on the ground of fraud, there is not a particle of proof offered by the grantee to repel the presumption which necessarily arises upon these facts—No proof to show how, or in what manner his father the grantor, became indebted to him, or to explain the circumstances under which the bill of sale was executed. His silence under such circumstances is a pregnant fact in determining the question of good faith in regard to the transaction. So taking all the facts together, the voluntary assignment of the life policy, the execution of a bill of sale, absolute on its face, but now admitted to be a mortgage, to secure a debt out of all proportion to the value of the property thereby conveyed, the limited means of the grantee, the utter insolvency of the grantor, and the failure on the part of the grantee to offer any evidence whatever to explain these facts, we are forced to the conclusion that the bill of sale is fraudulent.

The question as to the Statute of Limitations, arising on the exceptions filed to the audit in the sale of the real estate under the power in the mortgage, is not before us in this appeal. This much, however, we may say, that

although limitations may be a bar to *an action* at law on a *promissory note*, referred to in a mortgage, after the lapse of three years, yet if the mortgage contains a covenant to pay the debt, an action will lie on the covenant at any time within twelve years from the default.

From what we have said it follows, that so much of the decree as sets aside the assignment of the life policy must be reversed, and that part of the decree which sets aside the bill of sale will be affirmed.

*Decree affirmed in part,*
*and reversed in part, and*
*cause remanded.*

(Decided 5th February, 1886.)