695 A.2d 168

**GOODWIN AND BOONE, et al.**

**v.**

**CHOICE HOTELS INTERNATIONAL, INC.**

**Misc. No. 20, Sept. Term, 1996.**

Court of Appeals of Maryland.

June 19, 1997.

Reconsideration Denied July 23, 1997.

Sam B. Blair, Jr., Thad M. Barnes, Baker, Donelson, Bearman & Caldwell, Memphis, TN, Paul M. Vettori, Kenny, Vettori & Ribinson, P.A., Baltimore, all on brief, for appellant.

Harry M. Rifkin (Levin & Gann, P.A., on brief), Baltimore, for appellee.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, KARWACKI, RAKER and WILNER, JJ.

KARWACKI, Judge.

In this case, we are called upon to respond to two questions certified to this Court by the United States Court of Appeals for the Fourth Circuit pursuant to Maryland Code (1973, 1995 Repl.Vol.), § 12–601 *et seq.* of the Courts & Judicial Proceedings Article, and Maryland Rule 8–305. Involved are a franchise agreement executed between Quality Courts Motels, Inc. and David Goodwin, Charles Boone, and Robert Hall, and an assumption agreement executed between Quality Inns International, Inc. and the partnership known as Goodwin & Boone. The court asks:

"I. Whether a franchise agreement containing a recital directly above the parties' signatures evidencing the parties' intent that the contract be under seal, but that does not actually contain a seal, is nonetheless a contract under seal for purposes of Maryland's 12–year statute of limitations for contracts under seal, Md.Code Cts. & Jud. Proc. § 5–102(a)(5) (1995 Repl.Vol.).

II. Alternatively, whether a later assumption agreement, that is indisputably under seal, and pursuant to which the partnership Goodwin & Boone expressly assumed the obli-

gations of the individual parties to the original franchise agreement, is the document 'sued upon' such that the running of the statute of limitations is determined with reference to that sealed document."

We shall set forth the relevant facts prior to responding to these questions.

## I.

In March of 1972, Quality Courts Motels, Inc. entered into a franchise agreement (hereinafter "Franchise Agreement") with David Goodwin, Robert Hall, and Charles Boone for the operation of a Quality Motel in Memphis, Tennessee. The gentlemen were individual signatories to the executed contract. The Franchise Agreement set forth the parties' rights and obligations thereunder and included the following recital above the signature blocks:

"IN WITNESS WHEREOF, the parties have hereunto set their hands and seals as of the day and year first above written."

Notably, no seals were affixed near the signatures or elsewhere on the document. Thereafter, in July of 1985, ownership in the hotel was transferred to Goodwin & Boone (hereinafter "G & B"), a general partnership formed by two of the individual parties to the Franchise Agreement, David Goodwin and Charles Boone. As a result, G & B executed an assumption agreement (hereinafter "Assumption Agreement") with Quality Inns International, Inc.,[1] substituting itself as franchisee. Under its terms, G & B "assume[d] the obligations of the Franchisee[s] contained in the Franchise Agreement...." It is undisputed that this document was executed under seal.

In August of 1988, G & B breached the Franchise Agreement by ceasing to pay franchise fees and by leasing the hotel in October of 1988 to Tri–Mark Southeast Hotel Company

---

1. Quality Inns International, Inc. is the successor in interest to Quality Courts Motels, Inc. It is currently known as Choice Hotels International, Inc. For purposes of this opinion, we shall hereinafter refer to Choice Hotels as the franchisor under both agreements.

without Choice's consent. Thereafter, in January of 1989, Choice notified G & B that it was in material breach of the Franchise Agreement and terminated their relationship. Choice then brought suit against G & B in the United States District Court for the District of Maryland for breach of contract and trademark violations,[2] on April 3, 1989. During the pendency of the action, the parties entered into settlement negotiations. An agreement in principle was reached and Choice notified the district court thereof. The court then issued an order dismissing the action without prejudice and with the right to reopen within thirty days. Thereafter, draft agreements were circulated but G & B did not execute them. Because more than thirty days had passed, the April, 1989 complaint could not be reopened and Choice was forced to file a new suit, which it did on December 20, 1991. G & B moved to dismiss the new action, asserting that the cause was time barred. The district court granted the motion, holding that the previous dismissal served to bar the subsequent cause of action under *res judicata* principles. On appeal, the United States Court of Appeals for the Fourth Circuit reversed, *Choice Hotels Int'l, Inc. v. Goodwin & Boone*, 11 F.3d 469 (4th Cir.1993), whereupon G & B filed an Answer, again asserting, *inter alia*, the three-year statute of limitations as a defense. Holding that limitations did not bar the action because the Assumption Agreement was under seal and the Franchise Agreement was merged into it, the district court granted Choice's Motion for Summary Judgment and entered judgment against G & B in the amount of $195,228.92, representing unpaid fees and charges, interest, lost profits, and liquidated damages on Choice's trademark claim. Both parties noted appeals to the Fourth Circuit. Following oral argu-

---

2. Under the Franchise Agreement, G & B could continue using the "Quality Inn" name for only thirty days after termination of the contract. G & B continued to operate the facility for seventy days thereafter. G & B was, therefore, liable for trademark infringement for the additional forty days. Under the terms of the Franchise Agreement, this entitled Choice to liquidated damages, in the amount of $100 a day for each day the trademark was violated, attorneys fees, and costs.

ment, that court certified the two aforementioned questions to this Court.

## II.

If the sealed Assumption Agreement governs the limitations period, it is irrelevant whether the Franchise Agreement is under seal. Thus, we shall initially address the second question presented to us by the United States Court of Appeals for the Fourth Circuit.

G & B maintains that the Franchise Agreement is the agreement upon which Choice brought suit, thereby controlling the statute of limitations determination. It contends that dispositive of this issue is the language Choice utilized in pleading its Complaint—"that G & B ... breached the *Franchise Agreement* ...." (Emphasis added). Because that agreement is not under seal, G & B continues, Md.Code (1973, 1984 Repl.Vol., 1988 Cum.Supp.), § 5–101 of the Courts & Judicial Proceedings Article (hereinafter "CJ"), applies thereto and, because suit was not filed within three years of the time of its August 1988 breach, Choice is precluded from maintaining this cause of action.[3] G & B adds that there is nothing provided in the Assumption Agreement relative to terms and conditions with which it must comply; they are all contained within the unsealed Franchise Agreement. Simply, it asserts, there is no authority to support Choice's position that the Assumption Agreement can, and does, convert the Franchise Agreement into a contract under seal.

G & B's argument closely mirrors our decision in *Frank v. Baselaar*, 189 Md. 371, 56 A.2d 43 (1947), in which we were asked to determine the proper statute of limitations in a contract action in which two sets of agreements were at issue. On December 23, 1940, Ivan Frank and Henry Baselaar entered into a contract for the sale of stock. An initial

---

**3.** That statute provided that "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."

payment therefor was made at execution; further payments were to be made in installments, "the schedule of which ... [was to] be set out in detail in the assignment of the capital stock to be executed on the 28th day of December 1940." *Id.* at 373, 56 A.2d at 44. Seventy-one promissory notes made payable to Frank were executed on the 28th. Significantly, none were under seal and none provided for the payment of interest. These notes were the only further evidence of the parties' agreement; no schedule of payments, as called for under the initial contract, was outlined. When Baselaar failed to pay under the notes, Frank brought suit for damages. Baselaar pleaded the statute of limitations as a limit upon Frank's ability to bring suit. Judgment was later entered against Frank.

On appeal, we observed that "[t]here was no agreement because there was no time of payment specified" therefor in the initial contract. *Id.* at 375, 56 A.2d at 45. Despite the failure to complete a schedule for payment, delivery of the stocks and concomitant delivery of the promissory notes was held to have superseded the uncompleted agreement. The promissory notes, however, were "the real agreement" between the parties. We explained:

"[B]y acceptance of the notes, from the pleadings, [Frank] looked to those notes for payment. The suit [was] obviously not on the original contract because there [was] nothing provided therein for dates and manner of payment. The certain obligation on the part of the defendant to pay [was] the notes. From the pleadings the notes could not be considered the 'schedule' mentioned in the agreement of sale. The notes [were] separate obligations.... [T]here [was] no internal reference in the notes to the agreement of sale, nor [was] there any internal reference in the agreement of sale to the notes."

*Id.* at 375–76, 56 A.2d at 45. We then held that Frank had brought suit upon the notes, the cause of action properly being thereon, and, therefore, was barred from suit for having failed to bring it within three years of the respective due dates of

the various notes, the applicable statute of limitations being three years for unsealed documents.

G & B maintains that, just as Baselaar's obligation arose solely from the notes, its obligation arises from the unsealed Franchise Agreement, upon which Choice is precluded from bringing suit.[4]  Choice asserts that "the real agreement" in the instant case is *solely* the Franchise Agreement.  G & B's argument, it states, "misses the essential point that while the Franchise Agreement is a 'real agreement' and contains various terms of the relationship . . ., it does so only as modified by the Assumption Agreement into which it has merged and of which it is a part."  The crux of the matter, therefore, is whether the sealed Assumption Agreement provides Choice with a twelve-year statute of limitations within which it may bring suit against G & B for its breach of contract.

The Assumption Agreement provided that G & B "desire[d] to assume the obligations of Licensee contained in the Franchise Agreement," and that Choice was "willing to consent to such assumption by [G & B] on the terms and conditions of th[e] Assumption Agreement."  The Franchise Agreement was thereby incorporated by reference into the Assumption Agreement; it was a part thereof, as if it were fully set forth therein.  *Wheaton Triangle Lanes, Inc. v. Rinaldi*, 236 Md. 525, 531, 204 A.2d 537, 540 (1964); *Ray v. Eurice*, 201 Md. 115, 128, 93 A.2d 272, 279 (1952).  Unlike *Frank v. Baselaar*, where the promissory notes evidenced the obligation upon

---

4.  We note with interest G & B's statement that it is not even a party to the Franchise Agreement, and that the Assumption Agreement merely served to change the obligor under that agreement.  The fact that, nominally, the parties to the two contracts are not the same is not dispositive.  Choice and G & B are both successors in interest to the parties to the original Franchise Agreement.  Interestingly, if G & B were correct in its assertion, under what authority would it admit that it violated Choice's trademark and failed to pay franchise fees and, more importantly, receive profits?  No response is necessary, however; a contract may be discharged by a change in the parties thereto, as by the substitution of a new party in the place of the original parties by agreement of all, although the terms otherwise remain the same.  *Williams v. Maryland Glass Corp.*, 134 Md. 320, 327, 106 A. 755, 757 (1919).

which Frank brought suit, in the instant case, both parties' rights and obligations can only be fully determined by reference to both documents. The agreements must be read together. Thus, the sealed Assumption Agreement is a complete answer to the federal court's inquiry: Choice has twelve years from the August 1988 breach within which it may bring suit against G & B. *See* CJ § 5–102(a)(5).

### III.

Having concluded that the sealed Assumption Agreement is the relevant document for statute of limitations purposes, we need not determine if the Franchise Agreement is under seal.

**CERTIFIFED QUESTIONS ANSWERED AS HEREIN SET FORTH; COSTS TO BE PAID BY APPELLANT, GOODWIN AND BOONE.**