952 A.2d 328

The WELLINGTON COMPANY, INC. PROFIT SHARING PLAN AND TRUST

v.

Hosein M. SHAKIBA, et al.

No. 521 Sept. Term, 2007.

Court of Special Appeals of Maryland.

July 2, 2008.

578

Richard S. Basile (Law Office of Robert E. Ammons, PA on the brief), of Greenbelt, for appellant.

Brian S. Jablon (Adelberg, Rudow, Dorf & Hendler, LLC on the brief), Ellicott City, for appellee.

Argued before HOLLANDER, WOODWARD and James A., Kenney, III (retired, specially assigned), JJ.

HOLLANDER, J.

In this appeal, we must determine whether a contract action to recover a debt may be brought on a deed of trust, executed under seal, that contains a covenant to pay, even though the underlying obligation is also evidenced by a promissory note, for which limitations has arguably expired.

On October 12, 2005, the Wellington Company, Inc. Profit Sharing Plan and Trust ("Wellington," the "Trust," or the "Lender"), appellant, filed a Complaint in the Circuit Court for Anne Arundel County against Hosein M. Shakiba and Roya M. Shakiba ("Borrowers"), appellees.[1] Wellington alleged that it had loaned $53,000 to appellees on September 7, 2001, "evidenced by a commercial balloon note and deed of trust." Averring that appellees had defaulted on their obligation, appellant demanded judgment of $83,758.15, which included principal, penalties, and pre-judgment interest, plus $12,000 in attorney's fees. On December 14, 2005, Mr. Shakiba moved to dismiss the suit, contending that it was barred by the three-year statute of limitations set forth in Maryland Code (1974, 2002 Repl.Vol.), § 5–101 of the Courts and Judicial Proceedings Article ("C.J."). After the court denied the motion, the matter proceeded to a bench trial in February of 2007.

---

**1.** Ms. Shakiba did not participate in the trial. Nor has she filed a brief in this appeal. However, appellant noted its appeal from the order that entered judgment in favor of both Mr. and Ms. Shakiba. Therefore, we have included Ms. Shakiba as an appellee. When we use the term "appellee" in our opinion, however, we are referring only to Mr. Shakiba.

At the close of appellant's case, Mr. Shakiba moved for judgment. The court granted the motion, entering judgment in favor of appellees in an Order docketed April 6, 2007. This appeal followed. Wellington raises two issues, which we have rephrased slightly:

1.  Whether the Deed of Trust that was the basis of the Complaint was an instrument upon which an action at law for breach of contract could be maintained for monies due and owing.

2.  Whether the Note and Deed of Trust that were the basis of the Complaint were instruments under seal.

For the reasons set forth below, we shall reverse the judgment of the circuit court and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Wellington filed a one-count suit against appellees on October 12, 2005. In relevant part, the Lender averred:

> 2. That the Plaintiff loaned the sum of $53,000.00 to the Defendants on September 7, 2001.
>
> 3. That said loan was evidenced by and received by a commercial balloon note and deed of trust which are marked exhibits A and B respectively and which are attached hereto and incorporated herein by reference.
>
> 4. That the deed of trust referenced herein was recorded among the land records of Anne Arundel County, Maryland.
>
> 5. That pursuant to said deed of trust and commercial balloon note, the defendants were obligated to repay said loan. . . .

On December 9, 2005, Ms. Shakiba, through counsel, filed a "Notice of Filing of Case in Bankruptcy Court." It stated:

> You are hereby notified of the filing of a Chapter 7 bankruptcy case in the Baltimore Division of the United States Bankruptcy Court for the District of Maryland and pursuant to Section 362 of the Bankruptcy Code, this action is

stayed for [Ms. Shakiba]. The Bankruptcy Case No. is 04–35704 and was filed on October 25, 2004. This case was discharged on February 21, 2005.

On January 13, 2006, the court issued an Order stating:

The Court has reviewed the Bankruptcy Notice filed by [Ms. Shakiba's counsel]. As it does not appear that there is an existing bankruptcy, no stay is required. The notice was not accompanied by any schedules or other evidence indicating the debt that is the subject of this suit has been discharged.

The case shall proceed in [the] ordinary course.

As noted, Mr. Shakiba moved to dismiss appellant's suit, claiming it was barred by the three-year statute of limitations set forth in C.J. § 5–101. The court denied Mr. Shakiba's motion on January 13, 2006. The case was tried to the court on February 7, 2007.

At trial, Delbert Ashby, Trustee of the Trust, was appellant's sole witness. Mr. Ashby described the Trust as "the vehicle for retirement program [sic] for the [Wellington Company's] employees." He recalled that the Trust lent $53,000 to appellees in September 2001, reflected in a "Commercial Balloon Note" (the "Note") dated September 7, 2001, as well as a Deed of Trust, also dated September 7, 2001, secured by property located at 751 Defense Highway in Anne Arundel County (the "Property").

The Note, executed by appellees, matured on May 1, 2002. It was received in evidence and provided, in part:

1.  **BORROWERS PROMISE TO PAY.** FOR VALUE RECEIVED, the undersigned, Hosein M. Shakiba and Roya M. Shakiba (hereinafter referred to as the "Borrowers") promises to pay to The Wellington Company Inc., Profit Sharing Plan and Trust (hereinafter referred to as the "Lender") or order, the principal sum of FIFTY THREE THOUSAND ($53,000.00) DOLLARS. The principal and interest payments of this Note shall be due and payable as follows: (1) Interest will be charged on unpaid principal until the full amount of

principal has been paid. I will pay interest at a yearly rate of 18.000%[;] (2) the interest rate required is the rate I will pay both before and after any default described in section 3[;] (3) commencing on November 1, 2001 (the "Commencement Date"), interest and principal payments in the amount of SEVEN HUNDRED NINETY FIVE DOLLARS AND NO CENTS ($795.00) shall be paid monthly on the first (1st) day of each month until May 1, 2002, the maturity date; and (4) at the Maturity Day of May 1, 2002, the remaining principal sum and any unpaid interest shall be due and payable.

2. **Late Charges.** The interest and principal payments of this Note are due and payable on the first (1 st) day of each month. If the Lender has not received the full monthly interest payment by the end of the fifth (5th) calendar day after payment is due, Lender may collect a late charge in the amount of FIVE (5%) PERCENT of the overdue amount of each payment.

3. **Default and Acceleration.** If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. In the event of default in payment of this Note, then the entire principal sum thereon shall at once become due and payable, without notice, at the option of the holder of this Note. Failure to exercise this option shall not constitute a waiver of the right to exercise such option in the event of any subsequent default.

4. **Collection.** If this Note is forwarded to an attorney for collection after maturity hereof (whether by demand, acceleration, declaration, extension, or otherwise), the Borrower shall pay on demand all costs and expenses of collection including attorneys' fees of FIFTEEN (15%) PERCENT of the unpaid balance of the Principal Amount then outstanding.

\* \* \*

WITNESS the following hand and seal.

WITNESS/ATTEST

_____ [Signature] _____

Hosein M. Shakiba—Borrower

WITNESS/ATTEST

_____ [Signature] _____

Roya M. Shakiba—Borrower

(Emphasis added.)

Appellant also introduced in evidence the notarized Deed of Trust, which provided, in part:

## DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on this 7th day of September, 2001. The grantors are Hosein M. Shakiba and Roya M. Shakiba ("Borrowers"). The trustee is Delbert M. Ashby, Anne Arundel County, Maryland ("Trustee"). The beneficiary is The Wellington Company Inc., Profit Sharing Plan and Trust which is organized and existing under the Laws of Maryland, and whose address is 2579 Rutland Road, Davidsonville, MD 21035 ("Lender").

Borrower owes Lender the principal sum of FIFTY THREE THOUSAND ($53,000.00 DOLLARS).

This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on May 1, 2002

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in Anne Arundel County, Maryland:

[See Schedule A Attached]

which has the address of 751 Defense Highway, Davidsonville, Maryland 21035

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest: prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the note.

Paragraph 21 of the Deed of Trust set forth the Lender's remedies upon the Borrowers' default. It provided that, as a remedy for default, the Lender "may invoke the power of sale and any other remedies permitted by applicable law."

In addition, appellees signed the Deed of Trust under seal, as follows:

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

[Signature] _____(Seal)
Hosein M. Shakiba—Borrower
[Signature] _____(Seal)
Roya M. Shakiba—Borrower

Mr. Ashby testified that Mr. Shakiba made payments to appellant until March 15, 2002. He claimed that appellees were in default, and that $115,510.85 was due and owing, representing the sum of principal, interest, late fees, and attorney's fees.

On cross-examination, Mr. Ashby testified that he believed the Note was drafted by the company that handled the closing on the loan. He admitted that he did not witness the signatures on the Note. Moreover, he explained that Wellington attempted to foreclose on the Property, but never went to closing, or received any funds from it, because "an underlying first mortgage . . . came in and subsequently foreclosed it and wiped out" appellant's interest. The following ensued:

[MR. SHAKIBA'S COUNSEL]: *Okay. In that proceeding, did you file [a] request for a deficiency judgment?*

[MR. ASHBY]: *I think it was discovered that there was no proceeds left there to do so.*

[MR. SHAKIBA'S COUNSEL]: *Did you request a deficiency judgment against the borrowers in that proceeding?*

[MR. ASHBY]: *I would have to yield to counsel. I am not sure.*

After appellant rested, Mr. Shakiba's counsel moved for judgment; the court denied the motion. Mr. Shakiba did not present evidence, and his lawyer renewed his motion for judgment, based on limitations. Mr. Shakiba's attorney argued: "There is no relevance to the Deed of Trust." He maintained that, because the Note matured on May 1, 2002, suit was untimely, as it was instituted beyond the three-year limitations period in C.J. § 5–101. Further, he insisted that the twelve-year limitations period did not apply under C.J. § 5–102, because the Note was not signed under seal. Mr. Shakiba's counsel argued:

> The Maryland law is clear, and the Maryland law has been clear for many, many years, that that recitation in the document under the witness part or any recitations in the document ... without a seal is insufficient to render the contract into a speciality pursuant to Maryland law.

Appellant's counsel responded: "[W]e have sued on the note and the Deed of Trust." Observing that the Note contained the words "signed, sealed and delivered." Wellington's counsel claimed that the Note was, in fact, executed under seal. He also claimed that the suit was brought on a specialty.

By Order dated April 3, 2007, the court issued an "Order" entering judgment in favor of appellees, as well as a "Memorandum Opinion." In its Opinion, the court found that appellant's cause of action "began to accrue on May 1, 2002, the maturity date of the Note." The court reasoned that the Note was not a document under seal, and therefore appellant was not entitled to the twelve-year limitations period set forth in C.J. § 5–102. Rather, the court was of the view that the case

was governed by the three-year limitations period contained in C.J. § 5–101. Because appellant did not file its Complaint until October 12, 2005—over five months after the expiration of the three-year limitations period—the court concluded that suit was barred by limitations.

The court explained:

> [Appellant] contends that *Warfield [v. Baltimore Gas and Electric Co.,* 307 Md. 142, 512 A.2d 1044 (1986) ] stands for the proposition that a document will be under seal so long as there is "some recognition" anywhere in the document that it is under seal. However, this contention would defeat the purpose of the seal being an additional affixation as an attestation by the signatory that the document has been executed. In *Warfield,* the specific issue was whether the word "(SEAL)" which "was printed at the end of each of the prepared lines on the form and appears after the signature of Warfield," *id.* at 143, 512 A.2d 1044, was sufficient to make the document one under seal, where there was no recitation elsewhere that the document was under seal. The important factual distinction between *Warfield* and the case at bar is that the word "seal" appeared after the signature line in *Warfield,* and not in the body of the document.
>
> Furthermore, the Court cannot ignore the fact that the Note was not witnessed. This is not insignificant when the words Plaintiff contends act as a seal, "witness the following hand and seal," are followed by blank witness lines in addition to the Defendants' signatures which do no have any additional indication of a following seal. In other words, the non-existent seal was not witnessed according to the Note in evidence.

In addition, the court rejected appellant's claim that, "because there is a deed of trust indisputably under seal, which secures the repayment of the debt evidenced by the Note, 'the note is [also] under seal because it evidences such an intent and because it is referenced and incorporated into the deed of trust which is under seal.'" It reasoned:

This Court finds that the *Goodwin* case [i.e., *Goodwin and Boone v. Choice Hotels Int'l, Inc.*, 346 Md. 153, 695 A.2d 168 (1997),] does not support the Plaintiff's argument that the deed of trust, a separate and independent instrument, although signed contemporaneously with and referenced by the Note, can transform the Note into a specialty. In *Goodwin*, the substitute trustees specifically assumed the obligations and rights that were contained in the original unsealed document when they signed and legitimately sealed the new Assumption Agreement, which incorporated the old franchise agreement. The Assumption Agreement was not a separate and independent instrument, as is the case with the deed of trust and the Note in the case at bar.

Lastly, the Court finds that the deed of trust is merely a lien instrument, securing the Note that evidences the debt. Outside of the limited context of foreclosure and the remedies set forth in Md. Rule 14–208, the deed of trust cannot serve as the foundation for the Plaintiff's action requesting a judgment based upon the debt evidenced by the Note. *Kirsner v. Cohen, et al.*, 171 Md. 687, 190 A. 520 (1937).

The court concluded: "Therefore, the Plaintiff's complaint based upon the debt owed on the Note is barred by the statute of limitations and shall be dismissed with prejudice."

## DISCUSSION

### I.

Appellant contends that if a deed of trust contains a covenant to pay the debt secured by the deed, an action at law may be brought directly on that instrument to recover the debt. According to Wellington, the Deed of Trust "specifically provides in numerous places more than one covenant in which the Appellees agree to repay the debt evidenced by the Note." Moreover, appellant contends that limitations did not expire, because the Deed of Trust was executed under seal, for which

there is a limitations period of twelve years under C.J. § 5–102.

Appellant argues:

The statutory law is ... clear that in fact a deed of trust may be the basis for an action at law for breach of contract. Rule 14–208(b) specifically provides that a secured party may file a motion for deficiency judgment if the net proceeds of sale are insufficient to satisfy the debt and accrued interest. This rule specifically provides for an in personam judgment against the debtor.

\* \* \*

The deed of trust is no different than any other contract and, as such, may be enforceable by its terms or by any legal means available to the enforcement of a contract in this state. The deed of trust in this instance is a contract under seal subject to the 12–year statute of limitations.

According to appellant, the fact that appellees also executed the Note "is in no way determinative of the lender's rights." Claiming that, under Maryland law, a mortgagee may use all of its remedies to collect an outstanding debt, appellant maintains that the Lender could "proceed either on the note or the deed of trust, so long as the deed of trust contains an explicit covenant to repay the indebtedness." Appellant adds: "Such express covenant exists in this case."

Thus, appellant concludes that the Lender was entitled to sue directly on the Deed of Trust. Moreover, Wellington insists that it had twelve years to do so, dating from May 1, 2002, because the instrument was executed under seal.

In response, Mr. Shakiba contends that appellant's action "is not, nor can it be, an 'action on' the Deed of Trust." Rather, Mr. Shakiba argues that the Deed of Trust was intended by the parties to create a security interest and, "by its terms, simply secures the land owned by the Defendants and provides a right of sale to the named Trustee." He insists that the parties did not intend the Deed of Trust to function as a contract, because this would render the Note "superfluous

and indeed meaningless." Moreover, appellee maintains that the Deed of Trust "is merely a 'security instrument,' and (other than the statutorily created action for a deficiency decree), there is no common law cause of action available to the *beneficiary* arising from the Deed of Trust."

According to Mr. Shakiba, appellant's remedy with respect to the Deed of Trust was limited to a foreclosure action, coupled with the right, under Title 14 of the Maryland Rules, for a beneficiary to bring a deficiency action in the foreclosure proceeding. He maintains that the law "is very clear that the remedy in Rule 14–208, which was formerly codified in Art. 16 of the Maryland Code, has no application *outside* of the foreclosure context." Mr. Shakiba continues:

> By the terms of Maryland Rule 14–208(b), which is the only proceeding relevant to the Deed of Trust, Appellant was required to file a motion for a deficiency judgment within ***three (3) years*** after the final ratification of the auditor's report. **Accordingly, even where a deed of trust is under seal, a three (3) year statute of limitations applies to the claim for the debt.** Again, as recognized by the Trial Court, the instant case is not a motion for deficiency judgment under Maryland Rule 14–208(b). Indeed, as testified by the Appellant's witness, a foreclosure proceeding had been filed by a senior lender, but the witness was "not sure" whether the Appellant requested a deficiency judgment in that proceeding. (Emphasis added by appellee.)

Claiming that this case "is not a foreclosure proceeding," Mr. Shakiba insists that the Lender "cannot avoid the three (3) year limitation established by Maryland Rule 14–208(b) for a deficiency judgment, and Appellant has no additional common law claim based *on* the Deed of Trust for payment of the debt." (Emphasis added by appellee.) Moreover, Mr. Shakiba observes that appellant cites no cases to support his contention that a suit on the debt underlying the mortgage is " 'an action *on* ' the mortgage." (Emphasis added by appellee.) Rather, he contends that the cases cited by appellant "stand for the proposition that where a *mortgage* contains an

affirmative covenant to pay the debt, that language can be received 'as *evidence* of the indebtedness generally.' " (Emphasis added by appellee.)

To be sure, this case does not involve a foreclosure proceeding or other equitable action. Instead, it involves an action at law initiated by appellant to enforce either the Note or the Deed of Trust, as contracts, and to obtain a remedy at law—monetary damages. The question is whether the Deed of Trust constitutes an enforceable contractual obligation.

A "contract" is " 'a promise or set of promises for breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty.' " *Kiley v. First Nat'l Bank of Md.*, 102 Md.App. 317, 333, 649 A.2d 1145 (1994) (quoting Richard A. Lord, 1 *Williston on Contracts*, § 1:1, at 2–3 (4th ed.1990)), *cert. denied*, 338 Md. 116, 656 A.2d 772, *cert. denied*, 516 U.S. 866, 116 S.Ct. 181, 133 L.Ed.2d 120 (1995); *see Goldstein v. Miles*, 159 Md.App. 403, 427, 859 A.2d 313 (2004). The interpretation of a written contract is generally a question of law, subject to *de novo* review. *County Comm'rs for Carroll County v. Forty West Builders, Inc.*, 178 Md.App. 328, 376, 941 A.2d 1181 (2008); *see Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 306–07, 936 A.2d 343 (2007); *Wells v. Chevy Chase Bank, F.S.B.*, 363 Md. 232, 250, 768 A.2d 620 (2001); *Auction & Estate Representatives, Inc. v. Ashton*, 354 Md. 333, 341, 731 A.2d 441 (1999).

In the Deed of Trust, appellees covenanted to "promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the note." The instrument defines appellees as "Borrower," appellant as "Lender," and states: "Borrower owes Lender the principal sum of FIFTY THREE THOUSAND ($53,000.00) DOLLARS)." These provisions, read together, constitute a specific, definite obligation on the part of appellees. The parties did not render this obligation unenforceable merely by reciting the same obligation in a second document, i.e., the Note.

We are satisfied that the Note and Deed of Trust are separate, enforceable contracts. Although Wellington could not recover twice, it was entitled to seek repayment under either the Note or the Deed of Trust. We explain.

Mr. Shakiba would have us read out of the Deed of Trust appellees' express covenant to repay the loan, so as to deny appellant the power to enforce the promises in that instrument. But, a guiding principle of contract construction requires that we " 'give effect to [the] plain meaning [of the agreement] and do not delve into what the parties may have subjectively intended.' " *Eller v. Bolton,* 168 Md.App. 96, 116, 895 A.2d 382 (2006) (quoting *Rourke v. Amchem Prods., Inc.,* 384 Md. 329, 354, 863 A.2d 926 (2004)); *see WFS Financial, Inc. v. Mayor and City Council of Baltimore,* 402 Md. 1, 13, 935 A.2d 385 (2007). We must also give "effect to every clause and phrase, so as not to omit an important part of the agreement." *Owens–Illinois, Inc. v. Cook,* 386 Md. 468, 497, 872 A.2d 969 (2005); *see Bausch & Lomb v. Utica Mutual Ins. Co.,* 330 Md. 758, 779, 625 A.2d 1021 (1993). A determination that the Deed of Trust is contractual, and evidences appellees' indebtedness, does not render the Note "meaningless," or without effect, as appellee suggests; appellant could have timely pursued a suit on the Note. Although the Deed of Trust is, to some extent, cumulative as to the Note, the language the parties used in the instruments evidences their intent to create two separate documents to establish the same underlying obligation.

Mr. Shakiba also seeks to distinguish this case from an ordinary contract action because of the technical meaning Maryland courts have assigned to the term "deed of trust." He relies on a definition provided in *Springhill Lake Investors Ltd. Partnership v. Prince George's County,* 114 Md.App. 420, 428, 690 A.2d 535 (1997), in which the Court stated: "A deed of trust is a security device. It transfers legal title from a property owner to one or more trustees to be held for the benefit of a beneficiary." To this end, Mr. Shakiba emphasizes that deeds of trust "differ from technical mortgages in

their *form and manner* of execution and in the *rights of the parties."* *Simard v. White*, 383 Md. 257, 287–88, 859 A.2d 168 (2004) (citing Richard M. Venable, *The Law of Real Property and Leasehold Estates in Maryland* 253–55 (1892) (emphasis added by *Simard* )). As a result, claims appellee, the cases cited by appellant are "irrelevant," because they "stand for the proposition that where a *mortgage* contains an affirmative covenant to pay the debt, that language can be received *'as evidence* of the indebtedness generally.' ... Furthermore, the mortgage cases have no applicability to a deed of trust." [2]

Mr. Shakiba's bright line distinction between mortgages and deeds of trust is not supported by Maryland law. The Court of Appeals has long observed: "For most purposes [a] deed of trust *is* a mortgage." *LeBrun v. Prosise*, 197 Md. 466, 473–74, 79 A.2d 543 (1951); *see also Conrad/Dommel, LLC v. West Development Co.*, 149 Md.App. 239, 275, 815 A.2d 828 (2003) ("deeds of trust that evidence a security interest are treated as mortgages."). In *Manor Coal Co. v. Beckman*, 151 Md. 102, 115–16, 133 A. 893 (1926), the Court of Appeals asserted:

> *"A deed of trust to secure a debt is in legal effect a mortgage.* It is a conveyance made to a person other than the creditor, conditioned to be void if the debt be paid at a certain time, but if not paid that the grantee may sell the land and apply the proceeds to the extinguishment of the debt, paying over the surplus to the grantor. It is in legal effect a mortgage with a power of sale, but the addition of the power of sale does not change the character of the instrument any more than it does when contained in a mortgage. Such a deed has all the essential elements of a mortgage; it is a conveyance of land as security for a debt. It passes the legal title just as a mortgage does, except in those states where the natural effect of a conveyance is

---

**2.** Mr. Shakiba adds: "There are no cases cited supporting a contention that a suit on the debt underlying the mortgage is 'an action *on* ' the mortgage." Even if we accepted this assertion, it would not be relevant to this case. Appellant's action is on the *covenant* contained *in* the Deed of Trust and not, strictly speaking, an action "on" the Deed of Trust.

controlled by statute; and in states where a mortgage is considered merely as a security, and not a conveyance, a trust deed is apt to be regarded in this respect just like a mortgage. Both instruments convey a defeasible title only; the mortgagee's or trustee's title in fee being in the nature of a base or determinable fee; and the right to redeem is the same in one case as it is in the other."

(Emphasis added) (Quoting Leonard A. Jones, *A Treatise on the Law of Mortgages of Real Property* (5th ed. 1894) § 62).

■ Of course, there are distinctions between mortgages and deeds of trust. For example, we noted in *Conrad/Dommel,* 149 Md.App. at 275, 815 A.2d 828:

"There are two parties to a mortgage; the mortgagor (debtor) and the mortgagee (creditor). Deeds of trust are three party instruments; the grantor (debtor), the grantee (trustee) and the cestui que trust or beneficiary (creditor). When a mortgage is used, the property is conveyed directly to the creditor. With a deed of trust, the **property is conveyed** to a third party in trust for the benefit of the creditor."

(Emphasis in *Conrad/Dommel* ) (Quoting Russell R. Reno, Jr., Wilbur E. (Pete) Simmons, Jr., and Kevin L. Shepherd, MARY-LAND REAL ESTATE FORMS, § 3.1 at 275 (1983)). These distinctions—in the number of parties and how the encumbered property is conveyed—are the primary differences between a mortgage and deed of trust. But, they are not dispositive of the issue presented here.

■ As noted, Mr. Shakiba asserts that the sole remedy available to appellant, as the beneficiary of a deed of trust, was to move for a deficiency judgment, pursuant to Rule 14–208(b), in a foreclosure proceeding against the Property. The circuit court agreed with that contention. We do not.

Rule 14–208(b) provides:

(b) **Insufficiency of Proceeds—Deficiency Judgment.** At any time within three years after the final ratification of the auditor's report, a secured party or any party in interest entitled under the covenants of the lien instrument to

maintain an action for a deficiency judgment may file a motion for a deficiency judgment if the net proceeds (after deducting the costs and expenses allowed by the court) of sale of the entire property subject to the lien are insufficient to satisfy the debt and accrued interest. After notice of the motion has been given in the manner provided by Rule 2–121, the court may enter a judgment in personam for the amount of the deficiency against the party to the action who is liable for payment.

Article 66, § 25 of the 1939 edition of the Maryland Code was relocated to former Rule W75 in 1958, and exists in substantially similar form today as Rule 14–208(b). When originally enacted, the provision was in derogation of the common law because it granted to courts of equity a form of jurisdiction they would not otherwise possess: authority to issue an *in personam* deficiency decree against a debtor.

Maryland has had a similar provision, either a statute or procedural rule, since 1785. The Court of Appeals provided a useful historical background in *Austraw v. Dietz*, 185 Md. 245, 44 A.2d 437 (1945). After detailing the shortcomings of the strict foreclosure procedure, the Court observed, *id.* at 248–51, 44 A.2d 437:

> In 1785 the Maryland Legislature undertook to remedy the defects of the law by authorizing the court of chancery to order the sale of the mortgaged property for the satisfaction of the debt and, if the proceeds of sale did not satisfy the debt, to enter a decree against the mortgagor, or his heirs or personal representatives, for the amount of the deficiency.

> \* \* \*

> The statute regulating the procedure now in use provides that if the proceeds of the sale of the mortgaged property shall not suffice to pay the mortgage debt and [accrued] interest, the court "may, upon the motion of the plaintiff, the mortgagee or his legal or equitable assignee, \* \* \* after due notice by summons or otherwise as the court may

direct, enter a decree *in personam* against the mortgagor or other party to the suit or proceeding who is liable for the payment thereof for the amount of such deficiency; provided, the mortgagee or his legal or equitable assignee would be entitled to maintain an action at law upon the covenants contained in the mortgage for said residue of said mortgage debt * * *." Acts of 1892, ch. 111, Acts of 1939, ch. 507, Code 1939, art. 66, sec. 25.

\* \* \*

It is true that the statute authorizing the entry of deficiency decrees should be strictly construed because it is in derogation of the common law. *Gross v. Ben. Franklin Building & Loan Ass'n*, 157 Md. 401, 146 A. 229.

*Kirsner v. Cohen, supra*, 171 Md. 687, 190 A. 520, provides additional background. Dave Kirsner appealed from an *in personam* judgment for a deficiency after the foreclosure of a mortgage held by Sarah Cohen. He argued that the court lacked jurisdiction over the parties and subject matter, and that Ms. Cohen had an adequate remedy at law. The Court stated:

This was an ordinary foreclosure proceeding, under contractual authority and power contained in the mortgage, followed by the audit showing the balance due, and an order of the court finally ratifying the same. A proceeding in the usual form to obtain a deficiency decree was then instituted.

\* \* \*

Under the provisions of the Code, art. 16, § 232, such a decree is permitted in all cases where there could be a recovery on the covenants of the mortgage in a suit at law, and the same defenses that might be there urged may be set up in this proceeding. *County Trust Co. v. Harrington*, 168 Md. 101, 176 A. 639. This seems to be the test, and nothing has been here shown to indicate the appellee could not have asserted her rights and recovered in a court of law on the covenant to pay the principal of the debt and

interest. Nor can it be contended that constitutional rights of the appellant have been denied. *The authority to assert and present by petition a claim for the balance due and unpaid upon the foreclosure of a mortgage and to obtain a deficiency decree is given by the statute, article 16, § 232 of the Code.* This act has been before this court many times and its validity consistently recognized or approved, *County Trust Company v. Harrington, supra; Allen v. Seff,* 160 Md. 240, 153 A. 54, and the numerous cases there collected and cited in an elaborate opinion by Judge Offutt.

*Id.* at 690, 190 A. 520 (emphasis added).

The circuit court cited *Kirsner* and apparently relied on the italicized language above to support its conclusion that appellant's sole remedy in regard to the Deed of Trust was to bring a foreclosure action and seek a deficiency decree against appellees. But, as we have seen, the statute at issue in *Kirsner*—Code, Art. 16, § 232—conferred on a court of equity the authority to enter an *in personam* deficiency decree as part of its jurisdiction over foreclosure proceedings. The statute did not abrogate common law remedies that already existed, such as the power of the obligee of a debt instrument to bring an action at law against the obligor to recover money damages. To the contrary, the statute provided that a decree was permitted in all cases in which there could be a recovery on the covenants of the mortgage in a suit at law. As we see it, that statement constitutes recognition of the existence of such remedies at law. Art. 16, § 232 did not eliminate or restrict these existing remedies. Rather, it merely placed another weapon in a creditor's arsenal: the deficiency decree in equity.

This conclusion is buttressed by *Parks v. Skipper,* 164 Md. 388, 165 A. 319 (1933). Ida Parks executed a bond on April 13, 1922, promising to pay $7,500 to Armour Fertilizer Works ("Armour") on or before February 1, 1923. *Id.* at 389, 165 A. 319. To secure the payment, Ms. Parks executed and delivered to Armour a mortgage on property located in Yonkers, N.Y. Armour assigned the mortgage to Thomas Skipper on December 15, 1923. *Id.* Mr. Skipper died in 1929, and the

administratrix of his estate, Nannie Brice Skipper, sued Ms. Parks "in assumpsit on the common counts and a special count, on the covenant in the mortgage to 'pay unto the said party of the second part, (Armour Fertilizer Works), its successors or assigns, the sum of money mentioned in the said bond or obligation.' " *Id.* at 390, 165 A. 319. Ms. Skipper "offered in evidence the mortgage as the evidence of debt[.]" *Id.*

Noting that the case was *not* a foreclosure proceeding, the Court said:

> [T]his ... is a suit to recover *on the covenant to "pay the indebtedness" secured by the mortgage,* and the mortgagee is not restricted to the exercise of the power of sale therein provided; *any remedy at law or in equity for the collection of the debt is available to him* and his personal representatives. As said in *Wilhelm v. Lee,* 2 Md. Ch. 322: "The rule appears to be perfectly well settled, that *a mortgagee may sue at the same time at law upon his bond or covenant, and in equity upon his mortgage;* the case of a mortgage forming an exception to the general rule, that a party shall not be permitted to sue at law and here, at the same time, for the same debt. Indeed, the general rule itself applies only to cases where the demand at law and in equity are equally personal and not where the cumulative remedy is *in personam,* while the other remedy is upon the pledge. The remedy in this court, upon the mortgage, is *in rem,* and that at law *in personam.*" The mortgagee "may, in the words of the late Chancellor, (Bland,) 'sue on all his remedies at the same time,' " though, of course, he can have but one satisfaction of his demand. *Andrews v. Scotton,* 2 Bland, 629, 665, cited in *Gilman v. I. & M. Tel. Co.,* 91 U.S. 603, 615, 23 L.Ed. 405, 410; *Condon v. Rice,* 88 Md. 720, 44 A. 169; *Mizen v. Thomas,* 156 Md. 313, 320, 144 A. 479; 4 Kent, 183. It follows, therefore, that in the opinion of this court *the mortgage and assignment offered in evidence is prima facie evidence of the defendant's liability on the covenant to*

*pay recited in the mortgage* and the defendant's first prayer for an instructed verdict was properly refused.

*Id.* at 394–95, 165 A. 319 (emphasis added).

Powell on Real Property § 37.34, also provides guidance. It states:

> [S]ome jurisdictions fix a long limitations period for actions upon sealed instruments. The inclusion of an express covenant to pay as part of the mortgage itself permits both foreclosure and a deficiency judgment within that longer period, despite the fact that the mortgage note, as such, is barred by a shorter statute.

Several other authorities are to like effect. *See American Law of Property* (A. James Casner, ed.1952) § 16.163 ("Where a mortgage executed to secure a note also contains a covenant in which the mortgagor agrees to pay the loan, even though a shorter statute of limitations has run on the note, the mortgagee may still enforce the covenant."); Annotation, *Right to deficiency or personal judgment under mortgage notwithstanding bar of limitation against action on personal debt,* 124 A.L.R. 640 (1940) ("Where the mortgage contains a personal covenant for the payment of the debt, and the statute of limitations applicable to instruments under seal (such as a covenant) has not yet run, it is obvious that a deficiency or personal judgment may be recovered against the mortgagor under the covenant in a foreclosure action or in an action directly on the covenant, although the personal obligation secured by the mortgage is barred by the statute of limitation."); *see also Earnshaw v. Stewart,* 64 Md. 513, 517, 2 A. 734 (1886) (holding that "although limitations may be a bar to *an action at law* on a *promissory note,* referred to in a mortgage, after the lapse of three years, yet, if the mortgage contains a covenant to pay the debt, an action will lie on the covenant at any time within twelve years from the default." (Emphasis in original)). *But see Huntley v. Bortolussi,* 667 A.2d 1362 (D.C.1995) (holding that a promisee barred by limitations from enforcing a promissory note could not bring a debt action on the deed of trust, executed under seal and

securing the debt, because the deed did not contain a covenant to repay the indebtedness).

■ As we see it, appellee's argument—that appellant cannot bring an action on the covenants in the Deed of Trust because it is titled "Deed of Trust"—places greater importance on the title of the document, and the customary definition courts have assigned to that title, than on the language and content of the parties' specific agreement. This violates the principle expressed in *Della Ratta, Inc. v. American Better Community,* 38 Md.App. 119, 129, 380 A.2d 627 (1977): "Because a court ... has defined a word, term or phrase should not mislead us into thinking that that meaning is the only meaning or that that meaning is unalterable in other situations."

In *Della Ratta,* we cited favorably from 3 Corbin on Contracts, § 535, n. 18 (1971 Pocket Parts, pages 7–8):

A *"settled legal meaning."* Does either a legislature or a court have the power (constitutional or divine or physical or dictatorial) to limit or to determine the meaning with which a word must be used by its individual constituents? Without doubt, there have been naive attempts to exercise such a power. It has not yet been held that, in guaranteeing "freedom of speech and the press," the Bill of Rights denies it. Complex statutory enactments often contain a "glossary," with definitions of specific words and phrases; but these purport to declare the meanings intended by the legislature with respect to the particular statute, and not to force these meanings into the mouths and pens of individuals or of other legislators.

We are satisfied that the language in the Deed of Trust itself takes precedence over a title or a general definition of a "deed of trust" as being strictly a security instrument. Although the court below viewed the deed of trust as "merely a lien instrument," the one at issue here was more: a security instrument that contained a covenant to pay, because it included a recital of the underlying obligation.

Appellant has proceeded in a fashion almost identical to that of the obligee in *Parks*, seeking to enforce appellees' obligation by bringing an action at law, based on the Deed of Trust, which contains appellees' covenant to pay. Mr. Shakiba seeks to distinguish *Parks* on the basis that it is a "mortgage" case that has "no applicability to a deed of trust." We are not persuaded by appellee's position, he overstates the distinctions between the two types of instruments. The covenant to pay in the Deed of Trust is enforceable independently as a contract, even if the same obligation is also recited in a promissory note, a mortgage, or some other contract, however designated.

## II.

■ The parties do not dispute that the Deed of Trust was executed under seal. Appellant argues that because the Deed of Trust was executed under seal, it is a specialty, with a twelve-year statute of limitations.

C.J. § 5–102(a) states:

(a) An action on one of the following specialties shall be filed within 12 years after the cause of action accrues, or within 12 years from the date of the death of the last to die of the principal debtor or creditor, whichever is sooner:

(1) Promissory note or other *instrument under seal;*

(2) Bond except a public officer's bond;

(3) Judgment;

(4) Recognizance;

(5) Contract under seal; or

(6) Any other specialty.

(Emphasis added.)

C.J. § 5–102 does not define a "specialty." In *General Petroleum Corp. v. Seaboard Terminals Corp.*, 19 F.Supp. 882, 883–84 (1937), Judge Chestnut explained that a specialty "is a well-known term of the common law which in Maryland and elsewhere by judicial decision denotes a legal instrument under seal." *See also Allied Funding v. Huemmer*, 96 Md. App. 759, 766, 626 A.2d 1055 (D.Md.1993); *Attorney General*

*of Maryland v. Dickson,* 717 F.Supp. 1090, 1104 (D.Md.1989), *appeal dismissed,* 914 F.2d 247 (4th Cir.1990). A "specialty" is also defined in *Black's Law Dictionary* 1398 (6th ed.1990), as follows:

> A contract under seal. A writing sealed and delivered, containing some agreement. A special contract. A writing sealed and delivered, which is given as a security for the payment of a debt in which such debt is particularly specified.

The term "specialty" is commonly used in the context of a debt or a covenant. In Poe, *Pleading and Practice* § 139 (5th ed.1925), it was said that "Debt" was the exclusive remedy for suits on specialties and that "Covenant" was the appropriate action to recover damages for the breach of an agreement under seal. Even if a specialty is involved, however, a cause of action is not necessarily governed by C.J. § 5–102. *See Pantry Pride Enters., Inc. v. Glenlo Corp.,* 729 F.2d 963, 965 (4th Cir.1984) (holding that a claim arising under an amendment to a sealed contract was not governed by the twelve year limitations period because the amendment itself was not under seal); *Tipton v. Partner's Management Co.,* 364 Md. 419, 425, 773 A.2d 488 (2001) ("While the use of the word seal, in an appropriate context, could also create a specialty, historically its primary use in the conveyancing of property interests, even including leasehold interests, was to create a presumption of adequate consideration and a presumption of validity.")

> Whether a particular action is on a sealed instrument must depend on the character of the action; in order to be within the statute relating to sealed instruments, the action must be brought on the instrument itself, and the instrument cannot be merely an ultimate source of the obligation that the pliantiff [sic] seeks to enforce. In the absence of any indication that the contract sued upon is under seal, the special statute of limitations which governs actions on instruments under seal is not applicable.

54 C.J.S. *Limitations of Actions* § 54, at 90 (1987) (footnotes omitted).

Thus, it seems that in determining whether C.J. § 5–102 applies to a contract claim, a two-step inquiry is required: (1) Is the contract a specialty?  (2) Is the cause of action "on" the specialty?

The case of *Mattingly v. Hopkins*, 254 Md. 88, 253 A.2d 904 (1969), suggests that the trial court must determine if the cause of action is "grounded on some type of obligation set forth in the instrument."  There, the appellants sued a civil engineering firm for failing to lay out boundary markers in accordance with the recorded plats.  The appellees pleaded that the case was barred by the three year statute of limitations.  Appellants argued, *inter alia,* that, because the plats had been recorded in the office of the Clerk of the Circuit Court for Montgomery County, they were "instruments of record" and thus constituted specialties.  On that basis, appellants argued that the case was governed by the twelve year statute of limitations.  In rejecting this argument, the Court reviewed the history of the statute of limitations governing specialties as it pertained to instruments, stating, *id.* at 98–99, 253 A.2d 904:

> One must be impressed by the fact that under the general classification of specialties the text writers and cases all speak of specialties as grounded on some type of obligation set forth in the instrument.
>
> Professor Williston affords us little help in this instance as he simply states:  " * * * Centuries before the recognition of simple contracts, promises under seal were held binding.  They were variously called deeds, specialties, or covenants.  * * * " Vol. 1 *Williston on Contracts,* (3rd Ed. Jaeger) § 5.
>
> In Vol. 39A *Words and Phrases,* at 385, we find a discussion on specialties which states:  " * * * The term has long been used in England and America as embracing debts on recognizances, judgments, and decrees, and in England certainly debts upon statute;  ..."

* * * *

We find it illuminating that Chitty in his *Treatise on Pleading*, Vol. 2 (7th London Ed. 1851) lists in his Analytical Table under Declarations in Debt, various categories, i.e. "on simple contracts," "on specialties," "on records," and "on statutes."

In *Warfield v. Baltimore Gas and Electric Co.*, 307 Md. 142, 512 A.2d 1044 (1986), the Court held that an instrument was under seal because it was a pre-printed form that included the word "seal." The Court described the document, *id.* at 143, 512 A.2d 1044:

In 1979 appellant, Barbara L. Warfield, executed a guaranty to appellee, Baltimore Gas & Electric Company (BG & E). It was on a regular form of the company. "(SEAL)" was printed at the end of each of the prepared lines on the form and appears after the signature of Warfield. The instrument does not recite that it is under seal.

The Court held that the guaranty was a contract under seal, rejecting the appellant's contention that "there must be some recognition in the instrument that is under seal," a fact that was not present in *Warfield. Id.* at 148, 512 A.2d 1044. The Court cited with approval the following language, *id.* at 143–44, 512 A.2d 1044, from *General Petroleum Corp. v. Seaboard Terminals Corp.*, 23 F.Supp. 137, 140 (D.Md.1938):

1. If the contract is signed by an *individual* opposite and in obvious relation to a legally sufficient seal, the instrument will be taken as a sealed document, where there is nothing on the face of the paper to indicate the contrary even though there be no reference to the seal in the wording of the paper. 'A recital of the sealing or of the delivery of a written promise is not essential to its validity as a sealed contract.' A.L.I. Restatement of the Law of Contracts, § 100. 'A promisor who delivers a written promise to which a seal has been previously affixed or impressed with apparent reference to his signature, thereby adopts the seal.' A.L.I. Restatement of Contracts, § 98(1). This has recently been held the law in this Circuit. *Federal Reserve Bank of Richmond v. Kalin,* 4 Cir., 81 F.2d 1003, 1006. The Mary-

land decisions are the same. *Trasher v. Everhart*, 3 Gill & J., Md., 234, 246; *Smith v. Woman's Medical College*, 110 Md. 441, 446, 72 A. 1107.

The *Warfield* Court, 307 Md. at 145–46, 512 A.2d 1044, cited *Trasher v. Everhart*, 3 G. & J. 234 (1831). *Trasher* stated, *id.* at 246–47:

> From the earliest period of our judicial history, a scrawl has been considered as a seal, and it would be too late at this day, and would be attended with consequences too serious, to permit it to be questioned. It is not necessary, as has been argued, that the scrawl must be adopted by the obligor, by a declaration in the body of the bond, or single bill, to make it his seal. It is sufficient if the scrawl be affixed to the bond, or bill, at the time of its execution and delivery. For, if he execute and deliver it with the scrawl attached, it being considered here as equivalent to the wax or wafer, it is as much his seal, as if he had declared it to be so in the body of the instrument. The fact of the clause of attestation not appearing in the usual form of "signed, sealed and delivered," can, in reason, make no difference: for the question always is, is this the seal of the obligor? and if he has delivered it, with the scrawl attached, it is his seal, and must be so considered: for whether an instrument be a speciality, must always be determined by the fact, whether the party affixed a seal; not upon the assertion of the obligor, in the body of the instrument, or by the form of the attestation. In this case, the execution of the bill is admitted, and the plaintiff has possession of it which is evidence of delivery; and there is nothing to show that the scrawl was not attached, when it was executed and delivered, and the presumption always would be, that the seal was affixed to the instrument on its delivery, in the absence of evidence to the contrary.

In addition, *Warfield*, 307 Md. at 145, 512 A.2d 1044, relied on *Federal Reserve Bank of Richmond v. Kalin*, 81 F.2d 1003, 1007 (4th Cir.1936), in which the Fourth Circuit stated:

> Whether a mark or character shall be held to be a seal depends upon the intention of the executant, 'as shown by

the paper.' And, as the word 'seal' in parenthesis is in common use as a seal, its presence upon an instrument in the usual place of a seal, opposite the signature, undoubtedly evinces an intention to make the instrument a sealed instrument, which should be held conclusive by the court, in the absence of other indications to the contrary appearing on the face of the instrument itself.

These authorities persuade us that the Deed of Trust was a specialty. Appellant timely brought suit to enforce appellees' covenant to pay, recited in the Deed of Trust, within twelve years of the commencement of the limitations period. Consequently, the court erred in granting judgment to appellees, and in not permitting appellant to pursue its timely filed action on the Deed of Trust.[3]

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE HOSEIN SHAKIBA.**

---

**3.** Because appellant timely brought an action at law on the Deed of Trust, we need not address whether the Note was also a contract under seal.