MANOR COAL COMPANY ET AL. *v.* LOUISA BECK-
MAN ET AL.

*Equity Practice—Hearing on Bill and Answer—Deed of Trust*
*—Refusal of Trustee to Foreclose—Remedy*
*of Bondholders.*

Ordinarily, when a case is heard on bill and answer, it is
assumed that the well pleaded averments of the answer are all
true, but that only so much of the bill is true as the answer
admits.    p. 110

Where plaintiff fails to support his bill by evidence, but sub-
mits to a hearing on the answer, it is in effect a setting the case
down on bill and answer, and defendant should not be permitted
to offer testimony, since the truth of all defenses well pleaded
in his answer is conceded.    p. 110

On an issue as to whether a company, which had purchased
property covered by a deed of trust to secure bonds, owned a
majority of such bonds, admissions by its officers that holders
of such majority had disposed of them to the company made it
incumbent on the company, denying such ownership, to show
how and when it had disposed of them.    p. 113

Admissions by the trustee under a deed of trust that counsel
for minority bondholders communicated with it in reference to
a default in payment of the bonds, and that it refused to "do"
as he "requested," since the minority bondholders had advanced
no money for foreclosure expenses, and that it could not fore-
close in any event unless requested to do so by a majority of
the bondholders, *held,* when taken in connection with the facts
that the deed did not require the bondholders to advance ex-
penses, and that a majority of the bondholders were opposed
to foreclosure, to amount to an admission that the trustee had
refused and would refuse to enforce the deed of trust.    p. 114

A deed of trust to secure the payment of bonds, to be void
upon payment of the debt secured, is in substance and purpose
a mortgage.    p. 115

While ordinarily the payment of the debt secured by a deed of trust must be enforced through an execution of the power of sale by the trustee, yet, where he refuses to act, the lien may be enforced in equity.                                    p. 116

On the refusal of the trustee under a deed of trust to act thereunder, a bondholder may sue to enforce it in equity on his own behalf and on that of other bondholders in like situation.

p. 116

Where a deed of trust to secure bonds empowered the trustee, upon default, to sell the property on the request of the majority of the bondholders, but the majority of the bonds had passed into the control of the owner of the equity of redemption, and the trustee refused to act at the request of the minority bondholders, after default, *held* that equity would decree a sale of the property at the request of such minority bondholders.

pp. 116, 117

The owners of the equity of redemption could not claim a right to redeem the mortgage and prevent a judicial sale at the request of the minority bondholders secured thereby, by paying to these latter such sum as might be found to be the fair present value of the pledged property.                            p. 117

In order to redeem, the mortgagor or some other person in his behalf must perform or offer to perform the act for which the mortgage is a security, and where that act is the payment of money, he must tender the whole amount due, together with such lawful charges as are within the protection of the mortgage.                                              p. 117

*Decided June 11th, 1926.*

Appeal from the Circuit Court for Garrett County (WAGA-MAN, J.).

Bill by Louisa Beckman and others against the Manor Coal Company and others. From a decree for plaintiffs, defendants appeal. Affirmed.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT. DIGGES, PARKE, and WALSH, JJ.

*James Graham*, with whom were *Fred A. Thayer* and *Graham & Yost* on the brief, for the appellants.

*Horace P. Whitworth,* with whom was *Charles N. Finnell* on the brief, for the appellees.

OFFUTT, J., delivered the opinion of the Court:

The Three Forks Coal & Coke Company of Garrett County, a Maryland corporation, on October 19th, 1906, conveyed to the Commercial Trust Company, of Philadelphia, a Pennsylvania corporation, certain coal lands in Garrett County, in trust to secure an issue of bonds aggregating in par value $80,000 and payable in fifteen years, hereinafter called "first mortgage bonds." The equity of redemption in the property, by several mesne conveyances, became eventually vested in the Manor Coal Company, a corporation and one of the appellants, and that company conveyed it by two mortgage deeds of trust, dated respectively May 1st, 1920, and May 2nd, 1920, to the Franklin Trust Company of Philadelphia, also an appellant, to secure two issues of bonds, the first aggregating in amount $206,800 and the second, $89,200. When that was done holders of first mortgage bonds to the amount of $65,500 exchanged those bonds for bonds of the Manor Coal Company, but the holders of such bonds aggregating in par value $14,000, hereinafter for brevity referred to as the "minority bondholders," failed or declined to make that exchange, and those bonds remain unpaid and unsatisfied.

The property conveyed by the deed of trust to the Commercial Trust Company consisted of several tracts of unimproved coal land in Garrett County, separated from each other by other tracts of land which had been acquired by the Manor Coal Company prior to the execution of the deed to the Franklin Trust Company, and which the appellants contend were essential to the profitable and convenient use of the separated tracts conveyed to the Commercial Trust Company by the Three Forks Coal & Coke Company.

Under the terms of the latter conveyance, as we have stated, the bonds secured thereby payable in 1921, and interest thereon at the rate of four per cent. was payable semi-annually in April and October. It contained no pro-

vision for a sinking fund, but it did provide that, in case of default in the payment of the principal or interest due on the bonds, "all of said bonds intended to be secured hereby, shall at once become due and payable and these presents are hereby declared to be made in trust, and the said Commercial Trust Company, its successors and assigns, are hereby authorized and empowered at any time thereafter, upon the request of a majority of the bondholders, to sell the property hereby conveyed, or so much thereof as may be necessary, and to grant and convey the same to the purchaser or purchasers thereof, his, her or their heirs or assigns." The bonds were not paid at maturity but, in the absence of any request by a majority of the bondholders to that effect, the Commercial Trust Company failed to take any steps to enforce their payment. Thereupon the minority bondholders, the appellees in this case, demanded that it sell the property under the power contained in the deed of trust for the satisfaction of their debt. The company refused to take that action and the minority bondholders then filed the bill of complaint in this case, in which they asked that the property described in the deed of trust to the Commercial Trust Company be sold, and the proceeds of sale applied to the payment of their bonds, on the theory that the Manor Coal Company, which had mortgaged to the Franklin Trust Company the property secured by the deed of trust to the Commercial Trust Company, had secured a majority of the first mortgage bonds, and that it was against its interest to have the Commercial Trust Company mortgage enforced, because that would impair the security of the bonds of the Franklin Trust Company which it received in exchange for the first mortgage bonds.

The bill was filed against the two trust companies and the Manor Coal Company, but subsequently the Johnstown Coal & Coke Co., J. H. Beckman, and Gilmor S. Hamill, former owners of a majority of the Commercial Trust Company bonds, were permitted to intervene in the case as defendants and to answer the bill.

So far as the controlling questions involved in it are concerned, the case was in effect tried on bill and answer,

supplemented by defendants' testimony and stipulations of counsel, and the facts upon which those questions depend are to be in the main ascertained from the pleadings.    It is therefore necessary to refer to so much of the pleadings as may be material to the issues in the case, but before doing that we will state the main questions presented by the appeal, which are these:

First, whether a majority of the first mortgage bonds are in the hands of persons whose interests are opposed to a foreclosure of the mortgage from the Three Forks Coal and Coke Company to the Commercial Trust Company.

Second, whether the minority bondholders, after default had been made in the payment of their bonds, demanded that the Commercial Trust Company enforce the mortgage by which they were secured.

Third, if it was refused, and if the interests of a majority of the bondholders were opposed to such a foreclosure, whether the court, upon the request of the minority bondholders, in the exercise of its general chancery jurisdiction, had the power to decree a sale of the mortgaged property to enforce the payment of the bonds secured by the mortgage to the Commercial Trust Company.

And fourth, whether the minority bondholders can be compelled to accept in satisfaction of their bonds anything less than the par value thereof, or the proceeds of a judicial sale of the property pledged to secure them.

Under the terms of the deed of trust to the Commercial Trust Company, upon any default in the payment of the principal or interest thereby secured "all said bonds intended to be secured hereby shall at once become due and payable and these presents are hereby declared to be made in trust, and the said Commercial Trust Company, its successors and assigns, are hereby authorized and empowered at any time thereafter upon the request of a majority of the bondholders, to sell the property hereby conveyed, or so much thereof as may be necessary, and to grant and convey the same to the purchaser or purchasers thereof, his, her or their heirs or assigns."

The bill of complaint, after setting out in substance the facts to which we have referred, in the fifth paragraph thereof, referring to that power, went on to charge, "That after the time for the payment of said bonds and when they were past due and default had been made in the payment thereof, your orators demanded of the Commercial Trust Company of Philadelphia, Trustee, as aforesaid, that it proceed to exercise the power of sale granted to it in said deed of trust securing said bonds and to cause the property described therein to be advertised and sold as provided in said deed of trust, for the satisfaction of themselves and all of the bondholders whose past due bonds were secured thereby, but that said trustee refused so to do until requested by the holders of a majority of the bonds secured by said deed of trust, notwithstanding they were so informed and knew that the said the Manor Coal Company, the present owner of the property mortgaged to secure said bonds, had bought up and was now the owner and possessor of more than fifty per cent. of said bond issue."

The Manor Coal Company, which is now in possession of the mortgaged property, the Commercial Trust Company, and the Franklin Trust Company, filed answers to the bill, in which they admitted the execution of the mortgage deed of trust to the Commercial Trust Company. The Manor Coal Company in its answer said in part: "We admit that the bonds secured by said deed of trust still remain due and unpaid and that the time provided for the payment thereof by the terms of the bonds and the conditions of the deed of trust has long since passed. We deny that payment has been duly demanded by the plaintiffs from the Manor Coal Company of the bonds alleged to be owned by plaintiffs. We admit that the solicitors for the plaintiffs have communicated with the Manor Coal Company in regard to the payment of certain bonds, but deny that any demand sufficient in law and according to the terms of the deed of trust has been made upon the Manor Trust Company. * * * We aver that no demand has been made by Commercial Trust Company, trus-

tee, upon the Manor Coal Company to pay the amount of the bonds secured by the deed of trust 'Exhibit A,' or any part of them. To the extent that the plaintiffs have intended to aver that the Manor Coal Company has bought up and is the owner and possessor of more than fifty per cent of said bond issue, we deny that the Manor Coal Company has bought up any of said bonds, and deny that we are now the owner or possessor of any of said bonds secured by the deed of trust 'Exhibit A.' We demand strict proof of the other matters alleged in paragraph 5 in so far as the same are material." It further alleged that "the mine opening of Three Forks Coal & Coke Co. was on the area designated as 'First,' comprising lots 358 and 360, containing 50 acres each, and that all the coal of the lower Kittanning seam, under said tract called 'First' that could be mined from said opening was removed long before the conveyance to the Manor Coal Company on April 30th, 1920. In order to make available for mining the other coal covered by said deed of trust, 'Exhibit A,' it would be, and is, necessary to buy other intervening lands in many cases." It also stated that the Three Forks Coal & Coke Company sold the mortgaged property to the Three Forks Mining Company, which became insolvent, and that the Franklin Trust Company bought it at foreclosure proceedings subject to the lien of the deed to the Commercial Trust Company; that no sinking fund was provided for in that deed of trust; that there was no personal property on the mortgaged land; and that of the total acreage of six hundred and sixty-eight, one hundred and twenty-five acres had been mined, and that a liberal estimate of the value of the property when the answer was filed was $50,000; that "the actions of the plaintiff in this matter have been and are unreasonable, inequitable and unjust and in bringing this action, plaintiffs have done so for the purpose of harassing respondent, the Manor Coal Company, and not in good faith for the purpose of selling the mortgage property in satisfaction of the mortgage, the plaintiffs well knowing that it is not worth the amount of the

bond issue secured by said deed of trust; that it was, and is well known by those who owned the bonds of said Three Forks Coal & Coke Company that, by reason of the matters hereinbefore set forth, a foreclosure and sale of the property described in said deed of trust, 'Exhibit A,' would not enable them to realize the par value of the bonds, and foreclosure would be in vain, except to harass the Manor Coal Company" and it then "tendered judgment" to the plaintiffs "for their proportional share of the actual value of said property in the amount that $14,000 of said bonds bear to the whole $80,000 secured by said deed of trust."

The Commercial Trust Company, in its answer, after admitting the execution of the deed of trust to it, and of the several conveyances referred to in the bill, avers that "one hundred and sixty bonds of the Three Forks Coal & Coke Company, aggregating $80,000, being the total issue secured by the deed of trust, 'Exhibit A,' are outstanding, and deny that payment has been demanded from Commercial Trust Company, Trustee, by the plaintiffs, as averred in paragraph 4 of plaintiffs' bill, or by any of the holders of outstanding bonds; * * * that Horace P. Whitworth of Westernport, Maryland, representing himself as acting for the holders of $13,000 of bonds of the Three Forks Coal & Coke Company, communicated with us in regard to default in payment of said bonds. We admit that Commercial Trust Company, Trustee, declined to do as requested by said Horace P. Whitworth, Esq. We deny that we have been informed or know that the Manor Coal Company has bought up and is now the owner and possessor of more than 50% of said bond issue, as averred in paragraph 5; * * * that the Commercial Trust Company is Trustee for all the bonds secured by the deed of trust, and is prepared and desires to proceed in accordance with the provisions of the said deed of trust, and to comply with all its terms. We further say that no moneys have been advanced or suggested, or any indemnity tendered to the Commercial Trust Company, Trustee, to cover costs and expenses incident to foreclosure as requested by Horace P.

Whitworth, Esq.; * * * that Commercial Trust Company, trustee, has not received any sufficient assurance that the alleged holders of the $13,000 of said bonds are *bona fide* holders as to whom the Commercial Trust Company, trustee, owes any duty; * * * that the majority of the bond holders secured by said deed of trust have not instructed us to take proceedings as is provided in said deed of trust, and this respondent is not authorized to do so unless so instructed, and we, therefore, submit ourselves to the action of the court in this matter in so far as our position as trustee is concerned."

The Franklin Trust Company in its answer admitted the execution of the several deeds referred to in the bill of complaint, but denied knowledge of the other facts alleged therein, and called for strict proof thereof. Demurrers filed to these answers were overruled.

In addition to these answers, as has been stated, answers were also filed by certain persons who had at one time owned bonds secured by the Commercial Trust Company mortgage, but which had been exchanged for bonds secured by a mortgage to the Franklin Trust Company. Since they had no interest in the property or in the suit which was not represented by the Franklin Trust Company, it becomes unnecessary to notice the averments of their answers, since they could bind no other party to the cause.

As we have already said, the procedure in this case is unusual. The plaintiff, so far as the record shows, offered no testimony of any kind, but the defendant nevertheless did, so that we must infer that the case came on for trial on the bill, the answers, their accompanying exhibits, and the testimony of the defendants. Ordinarily, when a case is heard on bill and answer, it is assumed that the well pleaded averments of the answer are all true, but that only so much of the bill is true as the answer admits. *Miller's Equity*, par. 255, etc. And where the plaintiff fails to support his bill by evidence, but submits to a hearing on the answer, it is in effect setting the case down on bill and answer. In such a case it is not apparent why the defendant should be permitted to offer testimony, since the truth of all well pleaded

defenses set up in his answer are conceded. No objection on that ground was made however to the evidence in the lower court, or in this court, and we will treat it as though it were properly before us, but in doing that we are not to be understood as approving or recognizing the procedure followed in this case.

The only part of that evidence material to this inquiry is found in the testimony of Andrew B. Crichton, president of the Manor Coal Company, C. T. McCormick, and J. H. Beckman. Mr. Crichton in the course of his examination, in describing the transaction under which the holders of a majority of the bonds secured by the deed to the Commercial Trust Company exchanged them for Manor Coal Company bonds, gave this testimony: "Mr. Crichton, the amount of the deed of trust mentioned is $80,000? A. Yes, sir. Q. Have you valued this property at a total of $44,300. When did the bonds secured by the deed of trust become due? A. In October, 1921. Q. Was the Manor Coal Company in a position at that time to buy these bonds in question? A. Yes. Q. State whether or not any demand was made on you by the Commercial Trust Company, trustee in the deed of trust, for payment of the bonds? A. No. Q. State whether you had negotiated with any of the owners of these bonds with regard to payment of these bonds or taking them up? A. Yes, we had. We attempted to get in touch with the owners and I think we did get in touch with all of them. Q. State what arrangements were made with regard to these bonds? A. We offered to either pay them the value of the property or the value of the bonds which were secured by the property, which was not nearly worth the face value of the bonds, or we agreed to exchange new Manor Coal Company first mortgage five per cent. bonds for the old Three Fork's bonds. Q. Did you make any such exchange with any of the bondholders? A. Yes. Q. Do you know the amount? A. I think around $66,000. All of them agreed to exchange except the plaintiffs in this case, and did exchange their bonds." Later on, however, the same witness said: "Q. Mr. Crichton, it is stated in the bill that a majority of the bonds secured by the

deed of trust has been bought and are now owned and possessed by the Manor Coal Company; is that true? A. No, sir. The Manor Coal Company does not own any Three Forks bonds—never did." C. T. McCormick, assistant treasurer Johnstown Coal & Coke Company, which had exchanged its Commercial Trust Company bonds for bonds secured by the mortgage to the Franklin Trust Company, referring to the first named bonds, said: "Q. When these bonds matured or shortly prior, were you requested to exchange them for bonds of the Manor Coal Company five per cent. sinking fund gold bonds? A. We were and we did so." And the same witness, when asked why he opposed a judicial sale of the mortgaged property to pay the outstanding bonds, said: "First, the plaintiffs holding less than one fifth of the bonds desire to appropriate all the property of which we hold more than one ninth. Another reason, the property if sold would not be desirable to one other than the Manor Company, and if they bought it at forced sale they might be compelled to pay more than its real worth; another reason, a forced sale of this property would jeopardize the interest of all bondholders, as it would authorize the present trustee to foreclose the entire property as well as injuring the credit of the Manor Coal Company." J. H. Beckman, who at one time owned $48,000 of the Commercial Trust Company bonds, said: "When the bonds matured on October 1st, 1921, or shortly prior thereto, I was requested by the Manor Coal Company to exchange said bonds for the first mortgage five per cent. sinking fund gold bonds of the Manor Coal Company * * * I had several interviews with A. B. Crichton, president of the Manor Coal Company. I had a conference with the other bondholders and particularly with the plaintiffs and advised making the exchange. I made the exchange myself." He also testified that he opposed a judicial sale because it would "seriously affect" his interests, and hurt the credit of the Manor Coal Company, and depreciate the value of its bonds, of which the witness owned $48,000.

At the conclusion of this testimony, the case was argued, and submitted. So far as we can learn, the main question

considered at that argument was whether the court would permit the defendants to satisfy the plaintiffs' claim by the payment of such proportion of the fair market price of the property as the bonds held by them bore to the whole issue ($80,000). The court was not satisfied with the testimony as to value, and remanded the case for further testimony on that question. Thereupon testimony was taken and returned, which showed that F. Ernest Brackett, a mining engineer, valued the mortgaged property at $30,000; William Crichton, Jr., superintendent of the Manor Coal Company, at from $13,000 to $15,000; A. J. Chisholm, at $150 an acre; Otho Sharpless at $150 an acre, and Andrew B. Crichton at $44,300. When this testimony was returned, the case was again heard and finally submitted, and the court then decreed that the Manor Coal Company bring into court within thirty days $14,000 to be paid to the plaintiffs in satisfaction of their respective claims, and that failing such payment so much of the mortgaged property be sold as might be necessary to pay such bonds, and that the proceeds of such sale devoted to that purpose. It is from that decree that this appeal was taken.

The first issue of fact which we are asked to consider is whether a majority of the first mortgage bonds are in the hands of persons whose interests are opposed to any foreclosure of the Commercial Trust Company deed of trust, and as to that there can be no real question. Mr. Crichton, president of the Manor Coal Company, flatly said that that company had issued its bonds in exchange for bonds of the Three Forks Coal & Coke Company of the par value of $66,000, and that was obviously true. He did indeed say that the Manor Coal Company owned no bonds of the Commercial Trust Company, but having already testified that the holders of a majority of the first mortgage bonds had bought Manor Coal Company bonds with them and from the Manor Coal Company, it is manifest that that company must at some time have been in possession of them, and if it desired to escape the effect of such possession and owner-

ship, it was incumbent upon it to show, if it had disposed
of them, how and when it did so.   The testimony of Mr.
Crichton, that the Manor Coal Company had issued its bonds
in exchange for a majority of the first mortgage bonds is
corroborated by admissions in the answer of the intervening
defendants, and by the other evidence in the case.   And since
the Manor Coal Company bonds were secured by a mort-
gage on the property covered by the mortgage deed of trust
to the Commercial Trust Company, and since that property
was owned by the Manor Coal Company, it is of course
apparent that it is to the interest of the Manor Coal Com-
pany, as well as to the interest of the holders of its bonds,
that the mortgage to the Commercial Trust Company should
never be foreclosed.

Nor is there any real doubt that the minority bond-
holders demanded that the Commercial Trust Company en-
force the payment of their bonds by foreclosing the mort-
gage.   The answer of that company, although evasive, is
sufficient to warrant that inference.   It admits that Mr.
Whitworth, counsel for the minority bondholders, communi-
cated with it in reference to a default in the payment of
the bonds, and that it refused to "do" as he "requested,"
and it submits by way of explanation that the minority
bondholders had advanced no money for foreclosure ex-
penses, and that it could not foreclose in any event unless
requested to do so by a majority of the bondholders.   Taken
in connection with the established facts, that the deed of
trust did not require the bondholders to advance the costs
of foreclosure, and that a majority of the bondholders were
opposed to a foreclosure at any time, the answer of the trust
company amounts to an admission that it had refused and
would refuse to enforce the trust declared in the deed from
the Three Forks Coal & Coke Company to it.

This brings us to the controlling question presented by the
appeal, which is whether, in such a case as this, and under
the circumstances to which we have referred, a court of
equity is empowered to enforce the lien created by the deed

of trust to the Commercial Trust Company by a sale of the property conveyed thereby.

The nature and purpose of the deed of trust to the Commercial Trust Company are defined in the preamble of that conveyance in the following words: "Whereas, it is deemed expedient and to the interest of the stockholders, that the bonds of the Three Forks Coal & Coke Company of Garrett County be issued by said company, in the sums and at the rate of interest, and on the terms hereinafter set out; and in order to facilitate the sale and disposition of the same, that a deed of trust intended as a security in the nature of a mortgage on all its property, real and personal, rights and franchises, be made to some responsible trustee, to secure the payment of said bonds and the interest thereon." It also provides that upon payment of the debt secured by it the deed shall be void. The conveyance therefore, though called a deed, is in substance and purpose a mortgage, although it differs from the conventional mortgage in that the property pledged as security for money loaned is conveyed to a third person charged with the duty of enforcing the lien instead of to the lender directly. That statement of the purpose and meaning of the deed agrees with the general rule by which the character of such instruments is determined, and which is thus stated in *Jones on Mortgages,* par. 62: "A deed of trust to secure a debt is in legal effect a mortgage. It is a conveyance made to a person other than the creditor, conditioned to be void if the debt be paid at a certain time, but if not paid that the grantee may sell the land and apply the proceeds to the extinguishment of the debt, paying over the surplus to the grantor. It is in legal effect a mortgage with a power of sale, but the addition of the power of sale does not change the character of the instrument any more than it does when contained in a mortgage. Such a deed has all the essential elements of a mortgage; it is a conveyance of land as security for a debt. It passes the legal title just as a mortgage does, except in those states where the natural effect of a conveyance is controlled by statute; and in states

where a mortgage is considered merely as a security, and not a conveyance, a trust deed is apt to be regarded in this respect just like a mortgage. Both instruments convey a defeasible title only; the mortgagee's or trustee's title in fee being in the nature of a base or determinable fee; and the right to redeem is the same in one case as it is in the other." 19 *R. C. L.* 270. Its primary and essential purpose was to secure the payment of a debt, and the power of sale contained in it is collateral to, and in aid of that purpose, and is, generally speaking, a cumulative and not an exclusive remedy. And while ordinarily the payment of the debt.secured by the mortgage must be enforced through an execution of the power by the trustee, yet, where the trustee refuses to act, or where his conduct threatens to impair the security pledged by the deed, the lien may be enforced in a court of equity under its general chancery jurisdiction. *Jones on Mortgages,* pars. 1773, 1443, 1774. And under such circumstances a suit for that purpose may be maintained by a bondholder on his own behalf and that of other bondholders in like situation with him. *First Nat. Bank v. Radford Trust Co.,* 80 Fed. 569; *Jones on Mortgages,* 1385; 19 *R. C. L.* 521. That proposition, which does not appear to be questioned, is stated in a note to *Baltimore etc. v. United Rwys. & Elec. Co.,* 16 L. R. A. (N. S.) 1014, in this language: "If the trustees improperly refuse to commence proceedings for the protection of the rights of the bondholders, such refusal does not leave the latter without remedy; they may, upon refusal, commence in their own names proceedings for the protection of their rights," and a number of cases are there cited in support of it. To the same effect is 19 *R. C. L.* 521, where it is said: "Furthermore, while a mortgagee who is trustee, holding title to the security for all the bondholders as beneficiaries, is ordinarily the proper party to institute foreclosure proceedings, in case of unreasonable neglect or incompetency, or a refusal to discharge his duty, any bondholder may bring an action to enforce the security for the common benefit." While

these principles are not directly challenged by the appellants, they nevertheless contend that they are not applicable to this case because they say that the decree appealed from violates the provisions of the deed of trust, and is against the protest of a majority of the bondholders. The weakness and fallacy of that argument is apparent when it is considered that it amounts to no more than this, that where a majority of the bondholders have sold their bonds to the holder of the equity of redemption in the pledged property, and are therefore opposed to a foreclosure of the mortgage at any time, that they, by merely remaining passive and refusing to request a foreclosure, and the trustee by refusing to act without their request, can entirely deprive the minority bondholders of any opportunity of securing the payment of their debt by the foreclosure and sale of the property pledged under the deed. There is no authority for that proposition, so far as we know, and it is difficult to conceive that there could be.

The next proposition advanced by the appellants is that they should be permitted to redeem the mortgage and prevent a judicial sale thereof by paying to the minority bondholders such sum as may be found to be the fair present market value of the pledged property. That proposition is wholly novel, is in violation of the terms of the mortgage, and contrary to all authority old and new. The general rule is that, in order to redeem, the mortgagor or some other person on his behalf must perform or offer to perform the act for which the mortgage is a security, and where that act is the payment of money, he must tender the whole amount due, together with such lawful charges as are within the protection of the mortgage. 19 *R. C. L.* 646 *et seq.; Jones on Mortgages,* par. 1070 *et seq.*

For the reasons stated it follows that in our opinion the learned court below was correct in its conclusion and the decree appealed from will therefore be affirmed.

*Decree affirmed, with costs.*