REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1625

September Term, 2014

---

MARK S. DEVAN, ET AL.

v.

CHERYL KEYSER BOMAR

---

Eyler, Deborah S.
Nazarian,
Moylan, Charles E., Jr.
   (Retired, Specially Assigned),

                              JJ.

---

Opinion by Moylan, J.

---

Filed: October 2, 2015

In mortgage foreclosure law, as elsewhere, society's interest in finality and repose is a weighty one. As with statutes of limitations generally, procedural deadlines for raising certain challenges are established and strictly enforced. An unexcused failure to comply with a clear deadline may doom what might otherwise have been a highly meritorious challenge, had it been timely filed. In <u>Bates v. Cohn</u>, 417 Md. 309, 329-30, 9 A.3d 846 (2010), Judge Harrell pointed out why in foreclosure law a time for closing the books with certainty is an economic necessity or is, at least, economically desirable.

> "Although we acknowledge that the spectre of foreclosure is as daunting as it is disheartening, <u>if a borrower was able to raise any sort of exception after the foreclosure sale, there undoubtedly would be a chilling effect on interested prospective purchasers</u> coming to sales. Prospective third-party purchasers would be unable – based on most practical notions of what constitutes due diligence – to gauge against such claims the risk of an intended investment. Being a bona fide purchaser for value then would not mean as much or even offer the traditional safe harbor underlying that status."

(Emphasis supplied). The case now before us turns not upon the merits of a challenge to a foreclosure, but upon the timing of the challenge.

## The Foreclosure Now Before Us

The appellants are Mark S. Devan, Erin Gloth, Christine Drexel, and Brian McNair, substitute trustees, who are here appealing the August 28, 2014 Order of the Circuit Court for Washington County to set aside a foreclosure sale. The owner of the foreclosed property, who had filed exceptions to the sale, is the appellee, Cheryl K. Bomar.

On April 29, 2004, Mrs. Bomar and her late husband, Miguel Bomar, purchased their marital home at 14507 High Rock Road in Cascade, Maryland. Miguel Bomar signed a Promissory Note, but, for whatever unexplained reason, Mrs. Bomar did not join in signing

the note. The Promissory Note was secured by a deed of trust on the property.[1]  PNC Bank is now the servicer of the mortgage.

Miguel Bomar died on December 10, 2008. As the surviving tenant by the entireties, Mrs. Bomar became the sole owner of the property. For the next several years Mrs. Bomar, as personal representative of her husband's estate, continued to make regular and timely payments on the loan. On March 1, 2013, however, as she went to make her monthly payment, PNC Bank rejected the payment and placed the loan in default. Miguel Bomar's estate had just been closed. The bank told her that because her name was not on the Promissory Note, it would not accept payments from her.  PNC Bank demanded payment of the note in full. Three weeks later, on March 21, 2013, the substitute trustees initiated foreclosure proceedings on the property. On March 10, 2014, the property was sold at auction to Deutsche Bank Trust Company Americas, which had become the secured party on the Promissory Note.

On April 11, 2014, Mrs. Bomar filed exceptions to the foreclosure sale with the circuit court. The circuit court conducted a hearing on Mrs. Bomar's exceptions on August

---

[1]In any consideration of foreclosure problems, Judge Hollander's discussion of the essential similarity of a mortgage and a deed of trust in Wellington Co. v. Shakiba, 180 Md. App. 576, 593-94, 952 A.2d 328 (2008), provides reassuring context. See also, Lebrun v. Prosise, 197 Md. 466, 473-74, 79 A.2d 543 (1951) ("For most purposes [a] deed of trust is a mortgage.") (Emphasis in original); Manor Coal Co. v. Beckman, 151 Md. 102, 115-16, 133 A. 893 (1926) ("A deed of trust to secure a debt is in legal effect a mortgage."); Conrad/Dommel, LLC. v. West Development Co., 149 Md. App. 239, 275, 815 A.2d 828 (2003) ("[D]eeds of Trust that evidence a security interest are treated as mortgages.").

1, 2014. On August 28, 2014, the court issued an Opinion and Order in which it sustained the exceptions and ordered that the foreclosure sale be set aside.

## The Contentions

On appeal, the substitute trustees raise three contentions. They claim:

1. That the court erroneously based its conclusion on facts that had merely been proffered and for which there was no solid evidentiary foundation;

2. That the court erroneously considered as an exception to the foreclosure (a post-foreclosure challenge) a challenge that could only properly have been raised prior to the foreclosure sale (a pre-sale challenge); and

3. That the court erroneously declined to grant the motion of the substitute trustees to reconsider its order of August 28, 2014.

Because we agree with the appellants on their second contention, the other two contentions are effectively moot and need not be addressed.

## The Nature and Timing of the Challenge

In her April 11, 2014, filing of exceptions to the actual foreclosure sale of March 10, 2014, Mrs. Bomar, inter alia, charged the following:

"The circumstances behind the foreclosure sale of this property are dubious. As explained above, the spouse of a deceased note holder, who also happens to be a record owner of the Cascade property, is wrongly prevented from making payments on the promissory note. See 12 C.F.R. §591.4(b)(1)(iii)."

At the exceptions hearing on August 11, 2014, Mrs. Bomar argued that, as a surviving wife and home occupier, she is protected by a federal statute from the type of due-

-3-

on-sale option exercised by PNC Bank on this occasion. In its Opinion and Order, the court expressly found and ruled that the action of the bank had, indeed, violated the federal banking regulations in question.

> "Under 12 C.F.R. §591.5(b) (2014), 'A lender shall not ... exercise its option pursuant to a due-on-sale clause upon: ... a transfer by devise, descent, or operation of law on the death of a joint tenant or tenant by the entirety; a transfer, in which the transferree is a person who occupies or will occupy the property, which is: (A) A transfer to a relative resulting from the death of the borrower; (B) A transfer where the spouse or child(ren) becomes an owner of the property....' According to the facts proffered, the substitute trustees ceased accepting Mrs. Bomar's payments, and demanded that the note be paid in full. This is a direct violation of the federal banking regulation cited above."

(Emphasis supplied).

Although Maryland has not had an occasion to rule on the issue, it may well be that the protection of the federal regulation, limiting the utilization of due-on-sale clauses as predicates for foreclosures, is binding on Maryland. It is unnecessary, however, for us to address that substantive issue. What is before us, rather, is the procedural issue of whether a challenge of that nature is one that must be raised before the foreclosure sale takes place or is one that may also be raised as a post-foreclosure sale exception.

## A Problem of Perception

In terms of its possible adjudicatory appearances before the circuit court, a total foreclosure proceeding is frequently a two-step process. What is difficult for many litigants to grasp, as it is difficult for Mrs. Bomar to grasp in the present case, is that each step in the two-step procedure may be as separate and distinct from the other as would be two separate

-4-

and distinct procedures with separate and distinct names dealing with separate and distinct issues. Even to think, therefore, in terms of a "two-step" process carries the risk that, subconsciously at least, we think of the difference between the steps as little more than one of convenient chronology and feel, almost inevitably, that a matter of persuasive weight that might have been dispositive at a step-one hearing but narrowly missed the filing deadline should, somehow, be allowed to squeeze in and qualify as cognizable at a step-two hearing. "Equity should not punch a clock." Such, however, is not the case. By even conceiving of the foreclosure totality as one continuing, albeit two-step, process, we make it more difficult to appreciate the mutually exclusive character of the two steps. The temptation is to merge very different concerns into a single and indivisible concern.

In <u>Thomas v. Nadel</u>, 427 Md. 441, 443-44, 48 A.3d 276 (2012), Judge McDonald pointed out the difference between "before" and "after" as not simply a difference in **WHEN** challenges may be raised but as a difference in **WHAT** challenges may be raised.

> "<u>A borrower's ability to challenge a foreclosure sale is in part determined by whether relief is requested before or after the sale.</u> <u>Prior to the sale, a borrower may file a motion to stay the sale and dismiss the foreclosure action under Maryland Rule 14-211.</u> After holding a hearing on the merits of such a motion, the court may dismiss the foreclosure action if it finds 'that the lien or the lien instrument is invalid or that the plaintiff has no right to foreclosure in the pending action.'
>
> "<u>The situation is different after a foreclosure sale.</u>"

(Emphasis supplied; footnote and internal citations omitted).

## "Before": Essentially Challenging the Legitimacy of a Foreclosure

Maryland Rule of Procedure 14-211 spells out the procedure for timely challenging a threatened foreclosure after foreclosure proceedings have been filed but before a foreclosure sale has been conducted. The relief sought is the granting of a motion to stay the sale of the property and to dismiss the foreclosure action. As explained in Thomas v. Nadel, supra, 427 Md. at 444, n. 5, the relief sought before 2009 was an injunction forbidding the sale. The relief is now the motion to stay the sale and dismiss the action. It is pursuant to such a motion, Rule 14-211(a)(3)(B), that the movant should

> "state with particularity the factual and legal basis of each defense that the moving party has to the validity of the lien or the lien instrument or to the right of the plaintiff to foreclose in the pending action."

Pursuant to 14-211(b)(2), the court may then conduct a hearing on the merits and, if it deems the challenge meritorious, order the foreclosure action to be dismissed.

It was intended that knowable challenges to the legitimacy of a foreclosure action be raised in such a motion to dismiss and, if possible, be litigated before any foreclosure sale is authorized. Albeit written at a time (pre-2009) when the relief sought was still an injunction rather than a dismissal of the foreclosure action, Greenbriar Condominium v. Brooks, 387 Md. 683, 688, 878 A.2d 528 (2005) stressed the pre-sale nature of an attack on the propriety of a foreclosure, just as it stressed, by contrast, the limited nature of the challenges that may be made after a foreclosure sale has actually taken place.

> "We hold that prior to the sale, the debtor may seek to enjoin the foreclosure sale from proceeding by filing a motion to enjoin as provided in

-6-

Maryland Rule 14-209. <u>Should a sale occur</u>, however, <u>the debtor's later filing</u> of exceptions to the sale <u>may challenge only procedural irregularities at the sale</u> ...."

(Emphasis supplied). Although the nature of the requested relief may have changed from an injunction to a motion to dismiss, the required timing of the pre-sale challenge has remained a constant.

In <u>Fisher v. Federal National Mortgage Ass'n.</u>, 360 F. Supp. 207, 211 (D.Md.1973), the United States District Court described the Maryland Practice.

"Under Maryland foreclosure procedures, <u>plaintiffs are afforded two separate opportunities in which they may challenge</u> in a state court <u>the legality of the foreclosure</u>. First, ... plaintiffs may move prior to sale to enjoin the foreclosure. Secondly, after the sale but before ratification, plaintiffs have the opportunity to file objections to the sale."

(Emphasis supplied). See also, <u>Billingsley v. Lawson</u>, 43 Md. App. 713, 718-22, 406 A.2d 946 (1979).

<u>Bates v. Cohn</u>, 417 Md. at 318-19 (2010), also made it emphatically clear that those challenges to the legitimacy of a foreclosure proceeding that can be raised pre-foreclosure sale should, pursuant to Rule 14-211, be raised "before a foreclosure sale takes place."

"<u>Before a foreclosure sale takes place, the defaulting borrower may file a motion</u> to 'stay the sale of the property and dismiss the foreclosure action.' Md. Rule 14-211(a)(1). The borrower, in other words, may petition the court for injunctive relief, <u>challenging 'the validity of the lien or</u> ... <u>the right of the [lender] to foreclose in the pending action</u>.'"

(Emphasis supplied).

Thomas v. Nadel, 427 Md. at 445, reaffirmed that a defense "known and ripe" before the sale must be raised before the sale.

> "More recently, this Court affirmed the general application of the distinction between pre-sale and post-sale exceptions made in Greenbriar, reiterating that 'a homeowner/borrower ordinarily must assert known and ripe defenses to the conduct of a foreclosure sale prior to the sale, rather than in post-sale exceptions.' Bates v. Cohn, 417 Md. 309, 238 [ ] (2010)."

(Emphasis supplied). The adjectival activator is "known and ripe."

## "After": Essentially Challenging Procedural Irregularities in the Sale

At this point in our "before and after" discussion, it behooves us to move on to "after" because most of the statements in the case law with respect to what must be raised "before" the sale are uttered in the context of what may not be raised "after" the sale.

Maryland Rule 14-305 sets out the prescribed "Procedure Following Sale." Subsection (d)(1) provides that within 30 days after notice of a foreclosure sale has been given to an aggrieved party, that party "may file exceptions to the sale." The exceptions must "set forth the alleged irregularity with particularity." A hearing on the exceptions may follow. Subsection (d)(2). If, following such a hearing, the hearing judge "is satisfied that the sale was fairly and properly made," the judge will ratify the sale. Subsection (e).

The case law is clear as to the limited nature of valid exceptions to a foreclosure sale. A post-sale exception to a foreclosure sale is not an appropriate vehicle to challenge the broad equities of the entire foreclosure proceeding itself. It is, rather, a narrow challenge to the procedures employed in the execution of the sale process itself. Even an impeccable

-8-

foreclosure may be implemented by a foreclosure sale that is procedurally flawed. It would

be, therefore, a proper target for the filing of exceptions, notwithstanding universal applause

for the foreclosure proceeding itself. Conversely, even an unconscionable foreclosure

proceeding, if foreclosure should be erroneously ordered, might be implemented by a sale

that is itself procedurally impeccable. In such a case, Rule 14-305 exceptions would be the

wrong weapon aimed at the wrong target. A specific target must be precisely identified.

Generalized angst will not suffice. Judge Harrell spoke to this critical distinction in Bates

v. Cohn, 417 Md. at 327.

> "Rule 14-305 is not an open portal through which any and all pre-sale
> objections may be filed as exceptions, without regard to the nature of the
> objection or when the operative basis underlying the objection arose and was
> known to the borrower. ... [A]fter a foreclosure sale, 'the debtor's later filing
> of exceptions ... may challenge only procedural irregularities at the sale or ...
> the statement of indebtedness.'"

(Emphasis supplied; citation omitted).

As early as Greenbriar v. State, 387 Md. at 687, the Court of Appeals had focused on

the critical nature of the timing of a challenge to a foreclosure. As the Bates opinion pointed

out, 417 Md. at 320.

> "In Greenbriar, 'we determine[d] ... the point at which an objector to a
> foreclosure sale based upon the lien arising from a default in the payment of
> a condominium fee or assessment must formally make known his
> objections....'"

(Emphasis supplied).

Adopting the description of the typical procedural flaws that post-sale exceptions are generally designed to deal with from Greenbriar v. Brooks, 387 Md. at 471, Bates gave a good overview of the essential procedural nature of the sale process that post-sale exceptions are concerned with.

> "Such procedural allegations may charge that 'the advertisement of sale was insufficient or misdescribed the property, the creditor committed a fraud by preventing someone from bidding or by chilling the bidding, challenging the price as unconscionable, etc."

417 Md. at 327. The issue of **WHY** a foreclosure sale is to be conducted is absolutely separate and distinct from the very different issue of **HOW** a foreclosure sale is conducted.

Improprieties in the larger foreclosure process that occur before the sale and are known to the homeowner prior to the sale must be raised pre-sale. Thomas v. Nadel, 427 Md. at 449, affirmed the circuit court's rejection of a challenge because it was not timely raised even though it could have been timely raised.

> "The Circuit Court denied the exceptions, finding that the alleged irregularities concerning the assignment and ownership of the note could only have been raised prior to the sale, and ratified the sale."

(Emphasis supplied).

Bates v. Cohn, 417 Md. at 311, was also firm in holding that a challenge to the foreclosure proceeding itself that could be raised pre-sale must be raised pre-sale. Otherwise, it is waived. It may not be raised in post-sale exceptions.

> "[W]e agree with the Circuit Court for Montgomery County that Appellant, by failing to raise a ripe claim in this regard prior to the sale of her

-10-

house, waived effectively that claim. Ordinarily, such a claim must be asserted before sale as a ground to stay or enjoin the proposed sale."

(Emphasis supplied). See also, Jones v. Rosenberg, 178 Md. App. 54, 69-70, 940 A.2d 1109 (2008).

## "What Did She Know and When Did She Know It?"

The central thrust of Mrs. Bomar's attack on the effort of the bank to foreclose on the deed of trust on her home is that the bank utilized the due-on-sale clause to demand full payment on the deed of trust and that the use of such a due-on-sale clause in this case was in express violation of a federal regulation. Indeed, in his final Opinion and Order, the trial judge ruled that the use of the due-on-sale clause, on the basis of which he invalidated the foreclosure sale, was a violation of the federal regulation.

> "This passage from Brush [v. Wells Fargo Bank, 911 F. Supp. 2d 445, 460 (S.D. Tex. 2012)] bolsters the notion that Congress intended to prevent banks from enforcing due-on-sale clauses in narrow circumstances – including transfers of title upon the death of the borrower. Here, Mrs. Bomar became owner of the property when her husband passed away by her right of survivorship as a tenant by the entirety. Requiring her to pay the note in full by the due-on-sale clause as a result of her husband's death directly contradicts the mandates of the federal regulation."

> ...

> "Because the foreclosure sale was performed in bad faith and in violation of federal banking regulations, this Court orders that the foreclosure sale be set aside. Mrs. Bomar should be allowed to pursue her right to assume the mortgage on the property."

(Emphasis supplied).

-11-

The fatal problem with that challenge was not with its possible merit but with its timing. It was a sweeping attack on the Bank's entitlement to initiate the foreclosure proceeding at the very outset and not a complaint about the procedural niceties of the ultimate foreclosure sale itself. It, indeed, had absolutely nothing to do with how the ultimate sale itself was executed. Under the mandate of Bates v. Cohen and Thomas v. Nadel, the dispositive question for us, therefore, is whether that challenge to the utilization of the due-on-sale clause was a challenge that could have been raised prior to the foreclosure sale itself. The answer is self-evidently "Yes."

On March 1, 2013, PNC Bank demanded payment of the promissory note in full. On March 21, 2013, the substitute trustees initiated the foreclosure proceeding. That is when the alleged violation of the federal regulation took place. It was available, under Rule 14-211, as a plausible reason to file a motion to stay the requested foreclosure and/or to dismiss the entire foreclosure proceedings. It was fully knowable to Mrs. Bomar. It was not, however, urged by her upon the court. Essentially a full year went by before the foreclosure sale was conducted on March 10, 2014. The subsequent challenge, whatever might have been its merit, simply came too late.  Bad timing can be as fatal as lack of merit.

## An Ineffective Effort to Narrow the Meaning of Bates

In an effort to wriggle out from under Bates, Mrs. Bomar reads it very stingily. She argues that the Bates command that certain challenges must be raised pre-sale and not post-sale applies exclusively to a challenge based upon the failure of a lender to comply with pre-

-12-

sale loss mitigation requests. That was, to be sure, the literal challenge before the Bates

Court. In the course of the Bates opinion, it did look to the Committee note to Maryland

Rule 14-211 and then conclude:

> "The Committee note raised the issue of loss mitigation three times. It did so by stating that the failure to grant loss mitigation 'may be a defense to the right of the [lender] to foreclose in the pending action.' 2010 Committee Note to Rule 14-211(a)(3)(B) (emphasis added). A reasonable construction of this language (and its placement within Rule 14-211) indicates that a lender's failure to comply with loss mitigation requirements goes to its right to foreclose, rather than its procedural handling of the sale. As a result, a homeowner, who wishes to use the lender's failure as the basis of his or her claim, must do so through Rule 14-211's pre-sale injunctive relief apparatus."

(Emphasis supplied).

According to the appellee's self-serving exegesis of the opinion, Bates limited its

holding that certain challenges must be raised pre-sale to the special case of the lack of loss

mitigation efforts. The appellee then hastened to slip out from under Bates's shadow by

asserting that her challenge was not, as the substitute trustees had narrowly and

unnecessarily claimed it to be, a loss mitigation challenge and was not, therefore, controlled

by Bates. The trial judge followed her lead and seemed to rule that for a foreclosure

challenge to get out from under the loss mitigation label was ispo facto to get out from under

the Bates inhibition generally.

> "The substitute trustees argue that this Court cannot grant the exceptions because loss mitigation options must be pursued prior to the sale of the property. Bates v. Cohn, 417 Md. 309, 328 (2010). The problem with this argument is that Mrs. Bomar is not asserting loss mitigation options, she is asserting that the substitute trustees violated federal regulations, and did so in bad faith."

-13-

(Emphasis supplied).

The appellee's effort to limit the holding of <u>Bates</u> triggers a fascinating look at a largely neglected nuance of the larger decisional process. It is one that goes to the very core of how to read an opinion. The <u>Bates</u> opinion was no mere <u>ad</u> <u>hoc</u> fiat about loss mitigation, although it could have been written that way. It was, rather, a Platonic dialogue probing deeply into the larger reasons that produced the pre-sale versus post-sale dichotomy in the first place. We need not wonder, as the appellee would have us do, whether we can in this case extrapolate from a narrow holding a general rule of broader applicability. The very framework of <u>Bates</u>'s reasoning process has already done that for us. The <u>Bates</u> opinion began by setting forth and explaining the general rule. Its conclusion then consisted simply of locating or interpolating loss mitigation within that general rule. We need not ask, therefore, whether the scope of applicability may proceed from a known specific up to an unknown general, for the opinion itself has already preceded from the known general down to the theretofore unknown specific. Because Judge Harrell's reasoning was deductive rather than inductive, any question about the breadth of the opinion answered itself before it was even asked. The message of <u>Bates</u> is broadly that a challenge that can be raised pre-sale must be raised pre-sale.

> "<u>[A] homeowner/borrower ordinarily must assert known and ripe defenses to the conduct of a foreclosure sale prior to the sale</u>, rather than in post-sale exceptions. <u>A lender's failure to comply with pre-sale loss mitigation requests is one such defense</u>, which must be raised ordinarily pre-sale in an effort to prevent the sale from occurring."

-14-

417 Md. at 328. (Emphasis supplied).

Indeed, at the very outset of the opinion, Bates spoke in broad terms, not in narrow terms.

> "Appellant, by failing to raise a ripe claim in this regard prior to the sale of his house, waived effectively that claim. Ordinarily such a claim must be asserted before the sale."

417 Md. at 311. (Emphasis supplied).

In Thomas v. Nadel, 427 Md. at 442, the Court of Appeals reaffirmed the more sweeping reading of Bates.

> "In the recent decision in Bates v. Cohn, this Court reiterated that a borrower challenging a foreclosure action must ordinarily assert known and ripe defenses to the conduct of the foreclosure sale in advance of the sale."

(Emphasis supplied). That is a broad statement of a holding, not a narrow one.

## Bierman v. Hunter Diminuendo

After Greenbriar v. Brooks (2005) had been decided but before Bates v. Cohn (2010) was decided, this Court rendered its opinion in Bierman v. Hunter, 190 Md. App. 250, 988 A.2d 530 (2010). In Bierman, a borrower, after a foreclosure sale, filed an exception to the underlying deed of trust, claiming that her signature had been forged on both the original promissory note and the original deed of trust. The circuit court, finding her testimony to that effect to be "uncontroverted," set aside the foreclosure sale. This Court, notwithstanding the post-sale timing of the challenge, affirmed the circuit court's overturning of the foreclosure sale.

-15-

Instead of narrowly tailoring itself to the finding that the underlying deed of trust was a forgery, the language of our opinion tilted strongly toward an expansive view of the subject matter of post-sale exceptions. The post-sale exception in that case was permitted on the ground that it attacked "the validity of the underlying lien," a broader rationale than one confined to the forgery of the deed of trust itself. Our opinion distinguished Greenbriar v. Brooks, giving it in the process a very narrow reading. Our opinion also spoke approvingly of the broad authority of courts sitting in equity and of the court's "full power," under Rule 14-305(e), "to hear and determine all objections to the foreclosure sale."

When Bates was decided ten months later, it pulled back heavily on Bierman's linguistic reins. Bates, 417 Md. at 327, emphatically reaffirmed the full precedential vigor of the Greenbriar opinion.

> "To the extent that Bierman may be perceived as attempting to confine our Greenbriar holding to its particular circumstances, i.e., where there is a 'sum due and it is conceded that some sum is due and in default,' Bierman, 190 Md. App. at 266, 988 A.2d at 540, we hold that such a view would be misguided. Greenbriar was meant to be (and is) an explanation of the proper and general framework, structured in Rules 14-211 and 14-305, that a homeowner/borrower must follow when he or she seeks to raise pre- and/or post-sale objections in a foreclosure proceeding."

(Emphasis supplied).

Bates then reduced to more moderate and present-day size the "traditional power of equity courts to right injustice."

> "Bates anchors her appeal in the venerated history of the traditional power of equity courts to right injustices. She overlooks, however, that the Maryland Rules – a product of the Court – may bridle the extent of the

-16-

exercise of that power. This is such a case, where <u>the court's equity power is only as indefinite as the Maryland Rules allow</u>."

417 Md. at 329.

After pointing out how our <u>Bierman</u> opinion had "distinguished <u>Greenbriar</u>," <u>Thomas v. Nadel</u>, 427 Md. at 445, characterized <u>Bates</u> as having "expressly rejected" such a narrow reading.

"The Court in <u>Bates</u> thus <u>expressly rejected the narrow reading</u> of <u>Greenbriar</u> in <u>Bierman</u>."

(Emphasis supplied).

<u>Bierman</u> had also justified an expansive attitude toward post-sale exceptions by basing it on the broad equitable powers of the trial judge to "right injustice." <u>Thomas v. Nadel</u> reminded us of <u>Bates</u>'s express rejection of that so-called "broad authority" in equity.

"<u>In Bates, the Court rejected the rationale of Bierman that Maryland courts sitting in equity have 'broad authority' and 'full power</u> under Rule 14-305(e) <u>to hear and determine all objections to the foreclosure sale</u>.' Rather, the adoption of Maryland Rule 14-305 not only created <u>a new structure for the previously existing system of post-sale inquiries</u>, but it <u>also limited the permissible scope of post-sale exceptions to 'irregularities</u>.' The Court looked to the minutes of the Rules Committee for confirmation that <u>exceptions to a foreclosure sale under that rule are to relate to the validity of the sale itself</u>."

427 Md. at 445. (Emphasis supplied; citations omitted). The <u>Bierman</u> opinion, despite its earlier tilt in a different direction, does not help Mrs. Bomar in this case.

## Is Fraud an Exception to the Rule?

The question, "Is fraud an exception to the rule?" gives rise immediately to its counterpoint, "Why should it be?"[2] On a small but important issue, Maryland foreclosure law hesitates at a fork in the doctrinal road that would intrigue Socrates. It deserves serious consideration.

This Court's opinion in <u>Bierman v. Hunter</u> was never appealed. Although both <u>Bates</u> and <u>Thomas</u> have since toned down the language and tightly constrained the implications of <u>Bierman</u>, <u>Bierman</u>'s holding still stands as the law in that case. <u>Bierman</u> held that even a pre-sale challenge to a foreclosure could be raised in a post-sale exception if it were based upon a fraud in the underlying mortgage or deed of trust. In <u>Bierman</u>, one of the borrowers had alleged in a post-sale exception that her signature had been forged on the original promissory note and deed of trust. "The Circuit Court found her testimony to that effect to be 'uncontroverted' and set aside the foreclosure sale." <u>Thomas v. Nadel</u>, 427 Md. at 445.

---

[2]The first question resonates in Blackstonian jurisprudence, treating the answer as emanating from some pre-existing verity and committing the lawyer to divine the answer by reading the auguries. The second question, by contrast, follows from a more pliable and pragmatic jurisprudence that does not exalt the rule <u>per</u> <u>se</u> but will fashion the rule to serve a pragmatic purpose. The dispositive inquiry is always, "Why?" In "The Path of the Law," 10 Harvard L. Rev. 457 (1897), Oliver Wendell Holmes mused over the comparative virtues of utility and venerability.

> "It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past."

The <u>Bates</u> opinion, albeit restraining <u>Bierman</u>'s tone and reasoning, left open the question of whether a claim of a forged or otherwise fraudulent mortgage or deed of trust might, unlike other challenges, be raised at a post-sale exception. <u>Bates</u> first pointed out that fraud or forgery in the execution or performance of the foreclosure sale would, of course, be cognizable, simply as a classic instance of the general rule. It was unnecessary in <u>Bates</u>, however, to decide anything beyond that.

> "As we said in <u>Greenbriar</u>, <u>an allegation of fraud with respect to the procedure of the sale, may be asserted properly in a post-sale exception</u>. See <u>Greenbriar</u>, 387 Md. at 741, 878 A.2d at 563. <u>Whether an allegation of fraud regarding the underlying mortgage or deed of trust likewise may be raised post-sale</u>, however, <u>is a related, but distinct, question</u>. Notwithstanding <u>Bierman</u>, <u>we have not yet addressed such a question</u> under the more restrictive version of Rule 14-305."

417 Md. at 324 n. 10. (Emphasis supplied). That is hardly a ringing endorsement. It is, on the other hand, not a repudiation. It is what it is: a non-decision.

<u>Thomas v. Nadel</u> initially gave promise of answering that still-open question. The borrowers in that case, whose exceptions to a foreclosure sale had been denied as untimely, alleged that "certain defects in the chain of title to the note evidencing their debt" constituted a "fraud on the judicial system." 427 Md. at 443. Recognizing that their attack on the promissory note "did not relate to procedural irregularities at the sale," the borrowers nonetheless argued for an exception to the limitation on post-sale challenges in the special case where the alleged flaw in the pre-sale foreclosure proceedings amounted to fraud.

> "<u>The Thomases' post-sale exceptions did not relate to procedural irregularities at the sale</u> or to the statement of indebtedness. <u>Under the general</u>

-19-

rule set forth in <u>Greenbriar</u> and <u>Bates</u>, <u>those exceptions were untimely</u>. On appeal, with the benefit of counsel, <u>the Thomases urge that we qualify that general rule to allow an exception based on fraud infecting the deed of trust</u> – as left open in <u>Bates</u> – and argue for its application to this case. <u>They rely primarily on the argument that the gaps in the chain of title</u> of the note <u>amount to a 'fraud' on the judicial process</u> and their exception based on that argument was properly raised post-sale under <u>Bates</u>."

(Emphasis supplied, footnotes omitted).

<u>Thomas v. Nadel</u>'s promise to fill that remaining gap in foreclosure law went unfulfilled, however, when the alleged misconduct was held to be inadequate to qualify as fraud even if, <u>arguendo</u>, a special exception to the general rule in the case of fraud did exist.

"Unfortunately for the Thomases, the facts alleged do <u>not</u> amount to <u>the kind of fraud that might induce this Court to qualify the general rule</u> limiting the nature of post-sale exceptions."

427 Md. at 450 (emphasis supplied). The holding was clear.

"[W]e hold that the alleged defects do not establish that their deed of trust was the product of fraud."

427 Md. at 443. Thus, the mystery still abides.

Where then shall we look for the answer? That would seem to depend on the reasons for separating pre-sale challenges from post-sale challenges in the first place. Is fraud somehow unique or should it be handled like all other challenges? Does it not all go back to when was the challenge "ripe and known"? Is fraud necessarily a monolith, moreover, or are there certain frauds that might fall into the first category and others that might qualify

for the second? In <u>Thomas v. Nadel</u>, 427 Md. at 450, Judge McDonald suggested that fraud may, like the Queen of the Nile, enjoy "infinite variety."[3]

> "It is true that <u>fraud appears in many guises</u>. '[I]t is as old as falsehood and as versable[4] as human ingenuity.' But <u>it is not simply a label that may be applied to any set of puzzling circumstances</u>."

(Emphasis supplied; original footnote omitted).

Without presuming to answer the yet unanswered question, which is not before us in any event, we should take note of <u>Thomas v. Nadel's</u>, 427 Md. at 451-52, very cogent observation that all fraud is not the same and that society's interest in finality and repose may be stronger with respect to certain types of fraud than it is with respect to others.

> "Even when there is a material misrepresentation, <u>not all frauds involving documents necessarily bear the same consequences</u>. In the context of a fraud relating to execution of a document, <u>Maryland courts have distinguished between cases of forgery or alteration</u>, as well as cases where the executing party was mistaken or misled as to the very nature and effect of the document being signed, <u>from cases where the document is properly and intentionally executed but where the execution is induced by false pretenses or deceit</u>. ... The distinction is made because <u>there can be no bona fide holder of title under a forged deed</u> – where there was fraud in the creation of the document itself – <u>whereas a deed obtained by false pretenses or deceit</u> – for example, where the grantor is misled into believing the grantee is his long-lost brother – <u>can transfer title to a bona fide purchaser</u>."

(Emphasis supplied).[5]

---

[3]William Shakespeare, <u>Anthony and Cleopatra</u>, Act. II, Scene 2, describing Cleopatra.

[4]Capable of being turned.

[5] If and when that issue should arise, the analysis by Judge James Eyler in <u>Jones v. Rosenberg</u>, 178 Md. App. 54, 72-74, 940 A.2d 1109 (2008), of the difference between

(continued...)

The word "fraud" is not a totem or a talisman that calls for the promulgation of a procedural calendar of its own. It is more of a genus than a species. Perhaps certain manifestations of fraud might justify special treatment while others might not. Perhaps none might. As <u>Thomas v. Nadel</u>, 427 Md. at 454, concluded:

"We hold in this case that <u>a general allegation of 'fraud' does not suffice</u>." (Emphasis supplied).

In any event, our holding in this case does not remotely depend on an answer to that question. The law's ultimate answer, moreover, may be totally unexpected. When the choice of doctrinal direction is finally made, the rationale may inhere not in Socrates but in Yogi Berra: "When you come to a fork in the road, take it."

**JUDGMENT REVERSED; COSTS TO BE PAID BY APPELLEE.**

---

[5](...continued)
extrinsic fraud and intrinsic fraud may make a useful contribution to the discussion. See also <u>Schwartz v. Merchants Mortgage Co.</u>, 272 Md. 305, 308-09, 322 A.2d 544 (1974); <u>Manigan v. Burson</u>, 160 Md. App. 114, 120-21, 862 A.2d 1037 (2004); <u>Billingsley v. Lawson</u>, 43 Md. App. 713, 718, 406 A.2d 946 (1979).